ADAMS v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

100  555<br>e166  444|

1.  **Railroad: PASSENGER: NEGLIGENCE.** A passenger, aged sixty-seven years and in good health, was directed by the conductor to get off defendant's train, a freight carrying passengers, before reaching his station.  His duties requiring haste, he started along the train on the roadbed which was fenced with barb-wire and soon came to a bridge, to get over which he had to mount a flat car as did also another passenger.  Reaching the front of the car and being fearful lest the train might start, he, having first examined the ground, jumped from the coupling outward with one hand on the flat car in front, and in landing broke both bones of his leg. *Held* that the facts did not constitute a cause of action against the defendant.  [BRACE and BLACK, JJ., *dissenting.*]

2.  ——: ——: BREACH OF DUTY BY CARRIER.  Where a railroad receives a person as a passenger on its freight train, its conductor is guilty of a breach of duty in requiring him to alight at a distance from the station to which he paid his fare.  [Per BRACE, J.; BLACK, J., *concurring.*]

3.  ——: ——:, ——.  Such breach of duty was the proximate cause of the injury sustained by the plaintiff in this case, and no negligence of plaintiff contributed thereto.  [Per BRACE, J.; BLACK, J., *concurring.*]

4.  ——: EXCESSIVE VERDICT.  The verdict for ten thousand dollars was excessive.  [Per BRACE, J.; BLACK, J., *concurring.*]

#### *On Rehearing.*

1.  **Question of Fact:** PROXIMATE CAUSE. The question whether or not the wrongful act of defendant was the proximate cause of plaintiff's injury was a proper one to be submitted to the jury. [RAY, C. J., and SHERWOOD, J., *dissenting.*]

2.  ———: CONTRIBUTORY NEGLIGENCE. The question of plaintiff's contributory negligence was also a question of fact for the jury. [RAY, C. J., and SHERWOOD, J., *dissenting.*]

*Appeal from Cass Circuit Court.*—HON. N. M. GIVAN, Judge.

REVERSED AND REMANDED.

*Adams & Bowles* and *T. J. Portis* for appellant.

(1) The court should have sustained the demurrer to the evidence and directed a verdict for the defendant on the ground that the injury which plaintiff suffered was not proximate to the wrong attributable to the defendant in directing the plaintiff to leave the car at the point he did. *Searle v. Railroad,* 65 Texas, 274; *Lewis v. Railroad,* 54 Mich. 55; *Proctor v. Jannings,* 6 Nevada, 424; *Doggett v. Railroad,* 78 N. C. 305; *Wood v. Railroad,* 49 Mich. 370; *Pierson v. Duane,* 4 Wall. 605; *Francis v. Transfer Co.,* 5 Mo. App. 7; *Kistner v. City of Indianapolis,* 100 Ind. 210; *Car Co. v. Barker,* 4 Col. 344; *Scheffer v. Railroad,* 105 U. S. 249; *Henry v. Railroad,* 76 Mo. 288; *Cuff v. Railroad.* 35 N. J. (6 Vroom) 32. In *Trigg v. Railroad,* 74 Mo. 147, at page 153, the court cite with approval the case of *Francis v. Transfer Co.* and *Car Co. v. Barker,* 4 Col. *supra.* (2) Where a voluntary action intervenes between an incident and an injury resulting from the voluntary action, the incident is not the direct cause of the injury, even if it occasioned the voluntary action. *Lewis v. Railroad,* 54 Mich. 55; *Blake v. Newfield,* 68 Maine, 365; *Railroad v. Marion,* 104 Ind. 239; *Hyde v. Jamaica,*

27 Vermont, 458; *People v. Rockwell,* 39 Mich. 503; *Railroad v. Burroughs,* 33 Mich. 6; *Morrison v. Davis,* 20 Pa. St. 171; *Railroad v. Burney,* 71 Illinois, 391; *Railroad v. Staley,* 41 Ohio St. 118.     (3)   It is contributory negligence if, in the attempt to avoid that which is merely inconvenient and in no sense dangerous, the person injured encounters a danger obviously apparent to the minds of reasonable men.     *Railroad v. LeGeirse,* 51 Texas, 189; *Damont v. Railroad,* 9 La. Ann. 441; *Railroad v. Abel,* 59 Ill. 131; *Govett v. Railroad,* 16 Gray, 501; *Railroad v. Hendricks,* 26 Ind. 228; *Railroad v. Aspell,* 23 Pa. St. 147.     (4)   The act of the conductor, in receiving plaintiff's fare, did not bind him to stop his train at a station, or at any place convenient for the plaintiff to alight, or at any place other than the exigencies of the service in which the train was engaged demanded.     *Railroad v. Hatton,* 60 Ind. 12; *Railroad v. Randolph,* 53 Ill. 513.     (5)   Defendant's instruction, in the nature of a demurrer to the evidence, should have been given.     Plaintiff's evidence shows such contributory negligence as precludes his recovery.     *Nelson v. Railroad,* 68 Mo. 593; *Kelley v. Railroad,* 70 Mo. 604; *Henry v. Railroad,* 76 Mo. 293; *Lennox v. Railroad,* 76 Mo. 86; *Powell v. Railroad,* 76 Mo. 80; *Murch v. Railroad,* 29 N. H. (9 Foster) 9; *Mackey v. Railroad,* 67 Barb. 528; *Railroad v. Goddard,* 25 Ind. 185–199; *Downey v. Hendrick,* 46 Mich. 501; *Hassenger v. Railroad,* 48 Mich. 209.     (6)   The defendant had a right to make reasonable regulations as to mode of transporting the plaintiff as a passenger.     *Logan v. Railroad,* 77 Mo. 663; *Johnson v. Railroad,* 46 N. H. 213; *Cheney v. Railroad,* 11 Met. 121; *Railroad v. Bartram,* 11 Ohio St. 457; *Railroad v. Nozum,* 50 Ind. 141.     (7)   Passengers must take the responsibility of informing themselves of the every-day incidents of railway traveling. *Mitchell v. Railroad,* 51 Mich. 236; *Railroad v. Hazzard,* 26 Ill. 373.     (8)   It is the duty of a person about

to take passage on a railroad train to inform himself when, where and how he can go and stop according to the regulations of the railroad company. And if he makes a mistake, not induced by the railroad company, against which ordinary care on his part in this respect would have protected him, he has no remedy against the company for the consequences. *Beaucamp v. Railroad*, 56 Texas, 239; *Railroad v. Applewhite*, 52 Ind. 540; *Railroad v. Nozum*, 50 Ind. 141; *Cheney v. Railroad*, 11 Met. 121; *Railroad v. Proctor*, 1 Allen, 267; *Johnson v. Railroad*, 46 N. H. 213; *Railroad v. Bartram*, 11 Ohio St. 457; *Dietrich v. Railroad*, 71 Penn. St. 436; *Railroad v. Randolph*, 53 Ill. 510. By his ticket, a passenger acquires only the right to be carried according to the custom of the road. He can not insist on being carried out of the customary course of the road. *Railroad v. Randolph*, 53 Ill. 511. (9) The damages in this case seem so outrageous as to strike every one with the enormity and injustice of them, and so as to induce anyone to believe that the jury must have acted from prejudice or partiality. *Railroad v. Peavey*, 29 Kansas, 129; *Railroad v. Milliken*, 8 Kansas, 647; *Railroad v. Hand*, 7 Kansas, 380; *Railroad v. Young*, 8 Kansas, 659; *Railroad v. Dwyer*, Supreme Court of Kansas (not yet reported); *Collins v. City of Council Bluffs*, 35 Iowa, 432; *Rose v. Railroad*, 39 Iowa, 256; *Potter v. Railroad*, 22 Wis. 615; *Spicer v. Railroad*, 29 Wis. 580; *Railroad v. McAra*, 52 Ill. 296; *Railroad v. McKean*, 40 Ill. 218; *Railroad v. Henry*, 62 Ill. 142.

*Railey & Burney* for respondent.

(1) The defendant, being a common carrier of passengers for hire, was legally bound to provide reasonable and safe accommodations at its stations for the convenience of its passengers in alighting from its

trains, and to deliver them at such stations and afford them an opportunity of alighting thereat, and its failure and refusal to so deliver plaintiff was culpable negligence. *Winkler v. Railroad*, 21 Mo. App. 99, 105, 106 and 107; *Dawson v. Railroad*, 2 Am. & Eng. R. R. Cases, 134, and cases cited; *Railroad v. Whitfield*, 44 Miss. 481; Hutchinson on Carriers, sec. 602; Shearman & Redfield on Neg., secs. 12 and 280; *Railroad v. White*, 88 Pa. 327; *Stewart v. Railroad*, 53 Tex. 289; s. c., 2 Am. & Eng. R. R. Cases, 497; *Railroad v. Terry*, 62 Tex. 380; s. c., 21 Am. & Eng. R. R. Cases, 323; *Kelley v. Railroad*, 70 Mo. 604; *Doss v. Railroad*, 59 Mo. 27. (2) The defendant was legally bound, not only to furnish a safe and suitable place of landing for its passengers, but was also bound to furnish them a convenient and safe means or way of egress, by which they could depart from its premises and right of way without injury. Its failure to perform this duty was negligent and wrongful. *Hulbert v. Railroad*, 40 N. Y. 145; *Hoffman v. Railroad*, 75 N. Y. 605; *McDonald v. Railroad*, 26 Ia. 124; *Stewart v. Railroad*, 53 Texas, 289; *Patten v. Railroad*, 32 Wis. 533; *Gaynor v. Railroad*, 100 Mass. 211; *Hartwig v. Railroad*, 49 Wis. 362; 2 Thompson on Neg., p. 1085, sec. 3; *Stafford v. Railroad*, 22 Mo. App. 333; *Chance v. Railroad*, 10 Mo. App. 351; *Dillaye v. Railroad*, 56 Barb. 30–39; Shearman & Redfield on Neg. [3 Ed.] sec. 275, and cases cited; Hutchinson on Carriers, secs. 516, 517, 518 and 519; 1 Rorer on Railroads, p. 479, sec. 3; *Railroad v. Rosenweig*, 26 Am. & Eng. R. R. Cases, 489. (3) Having stopped the train at an unusual and dangerous place, it was the duty of the conductor, who is presumed to have known the surroundings and the danger of leaving the premises, to advise the passenger how to get out and to render such assistance and attentions and furnish such means as was in his power to extricate him from his perilous position. His failure to do so was

gross negligence. *Railroad v. Whitfield*, 44 Miss. 481; *Allender v. Railroad*, 43 Ia. 276–281; *Cartwright v. Railroad*, 16 Am. & Eng. R. R. Cases [Mich.] p. 321; *Railroad v. Matthews*, 7 Vroom, 532; *Klein v. Jewett*, 26 N. J. Eq, 480; *Railroad v. Howe*, 52 Miss. 202. (4) The negligence of defendant's servants in failing to carry plaintiff to its common landing at the depot, in failing to provide him a safe means of egress from its premises and right of way and in failing to render him any assistance in extricating himself from the perilous position in which they had placed him, all combined to bring about the injury complained of, and was the immediate and proximate cause thereof. "Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the original wrong-doer." *Harris v. Railroad*, 4 McCrary, 454; *White v. Railroad*, 5 Dillon, 428 (434); *Evans v. Railroad*, 11 Mo. App. 463; *Patten v. Railroad*, 32 Wis. 524; *Hartwig v. Railroad*, 49 Wis. 364–365, and cases cited; *Brown v. Railroad*, 54 Wis. 342, and cases cited; *Railroad v. Kemp*, 61 Md. 74; *Strauss v. Railroad*, 75 Mo. 186. (5) The question as to whether the defendant's negligence was the proximate cause of the injury complained of was properly for the jury to determine. If the evidence shows a state of facts from which different minds might fairly and honestly draw different conclusions as to what was the controlling or direct cause of the matter in controversy, it is a question to be submitted to the jury, although such facts are undisputed. *Stafford v. Railroad*, 22 Mo. App. 333; *Clemens v. Railroad*, 53 Mo. 366; *Kellogg v. Railroad*, 26 Wis. 223; *Railroad v. Kellogg*, 94 U. S. (L. C. P. Co. Ed. 356) 459; *Haff v. Railroad*, 4 McCrary, 622; *White v. Railroad*, 5 Dillon, 428 (434); *Railroad*

*v. Fleming*, 18 Am. & Eng. R. R. Cases [Tenn.] 347; *Evans v. Railroad*, 11 Mo. App. 463; *Patten v. Railroad*, 32 Wis. 524; *Hartwig v. Railroad*, 49 Wis. 364–5; *Brown v. Railroad*, 54 Wis. 342, and cases cited; *Ehrgott v. Mayor*, 96 N. Y. 264; *Boss v. Railroad*, 32 Alb. L. J. [R. I.] 266; *Hart v. Bridge Co.*, 80 N. Y. 622; *Railroad v. Van Steinburg*, 17 Mich. 99, 122; *Railroad v. Kemp*, 61 Md. 74. (6) Where freight trains are in the habit of carrying passengers, a person admitted thereon as such is entitled to all the rights of a passenger, and the company incurs the same liability to him for an injury received by its negligent or wrongful act as if it occurred on a regular passenger train. Rorer on Railroads, p. 986; *Edgerton v. Railroad*, 39 N. Y. 227; *Railroad v. Lockwood*, 17 Wall. 357; s. c., 84 U. S. [L. C. P. Co. Ed.] 627. (7) This action is not for a breach of contract, but for tort, being for injuries sustained by reason of defendant's wrongful and negligent acts. The rule of law in the latter class of cases is that the party guilty of a tort or other wrongful act is liable for all direct injury resulting therefrom, although such injury could not have been contemplated as a probable result of such act. *Miller v. Railroad*, 90 Mo. 389; *Evans v. Railroad*, 11 Mo. App. 463; *Railroad v. Kemp*, 30 Alb. L. J. 92; *Murdock v. Railroad*, 133 Mass. 15; 3 Sutherland on Damages, p. 714. (8) The plaintiff, not being acquainted with the surroundings, was not negligent in getting off the train in obedience to the conductor's orders. Wharton on Negligence, sec. 371; Shearman & Redfield on Negligence, sec. 282; *Allender v. Railroad*, 43 Ia. 281; *Chance v. Railroad*, 10 Mo. App. 352; *Kelley v. Railroad*, 70 Mo. 608; *Leslie v. Railroad*, 88 Mo. 50. (9) The court will not reverse the cause merely on account of excessive damages, unless they are such as, under the circumstances, shock the understanding and induce the conviction that the verdict was the result of passion, prejudice,

partiality or corruption. The damages assessed were not excessive. Sedg. on Measure of Damages [4 Ed.] p. 713, and authorities; *Railroad v. State*, 12 Am. & Eng. R. R. Cases, 149; *Farish v. Reigle*, 11 Grat. 697; Thompson on Car. Passengers, 576–585; *Whalen v. Railroad*, 60 Mo. 323; *Porter v. Railroad*, 71 Mo. 66; *Pry v. Railroad*, 73 Mo. 124; *Waldhier v. Railroad*, 87 Mo. 37.

BRACE, J.—This is an action for personal injuries in which the plaintiff recovered judgment in the circuit court for ten thousand dollars' damages from which the defendant appeals.

At the time of the injury the defendant was carrying passengers on all its freight trains. The plaintiff by profession a minister of the gospel, aged about sixty-seven years, in good health, earning about seven hundred dollars per annum in his profession, took passage on one of defendant's freight trains at Archie, a station, for Harrisonville, another station on defendant's road, paying the usual fare to the conductor, and informing him of his place of destination. When the caboose in which plaintiff was riding, and which was at the rear end of the train, arrived at a point about one quarter of a mile from the depot at Harrisonville at which passengers were usually landed, the conductor came to him and said: "You will have to get off here; I am not going to stop when I start; I will not stop at the depot; I shall go on as fast as I can," and leaving him went forward on the flat ·cars loaded with coal in the train towards the engine and the depot.

The plaintiff seeing no other employes of the road about and being unacquainted with "the ground around there" got off the caboose at the rear end thereof, and discovered that the train was stopping on a "fill," and that the road-way on each side was fenced with a barbed-wire fence of five strands. His business being urgent,

he started on the roadbed alongside the train towards the front to make his way up to the depot. He had proceeded in his course but a short distance (three or four car lengths from the caboose) when he came to a bridge across a water-way, provided for through the fill in the ravine, the bridge resting on two perpendicular stone abutments about fifteen feet high, the whole space of the bridge occupied by one of the flat cars in the train loaded with coal, and the space between the bridge and the barbed-wire fence running parallel with the road, closed by a similar fence running from one to the other; his further progress in the direction of the depot was thus completely blocked except by way of the coal car over the bridge. His subsequent movements appear from the following extracts from his evidence given on the trial:

Q. "Now state to the jury why you didn't go on to the depot?"

A. "There was a barbed-wire fence right before me and one at my right side and I could not get out. There was a young man on the other side of the train; it was Mr. Kerens, and he was a little more active than I was and got up on one of the flat cars, and I got up on that flat car and walked the length of it until we passed over the culvert, and then I swung off and tried to get down as cautiously and prudently as I could. The train was standing still at that time. In getting off I was probably considerably excited for fear the train would start; I was a long ways from the engine and I didn't know when the engine would start; I hurried to get off, and when alighting I fell over so that I think my foot struck the end of one of the ties and snapped the leg right there."

Q. "State to the jury if it was hurt as you got off the train?"

A. "I hadn't made a motion with the other foot until I felt my leg give way."

*Q.* " State to the jury what was the condition of your eyesight at that time ? "

*A.* " My sight is not as good as it was some years ago. I examined the ground before I got down; I thought I could make it."

*Q.* " State to the jury what was the condition of the ground there, so far as you could see ? "

*A.* " The ground was quite descending; it was rather steep; it was lower from the sidetrack out to where the grade commenced; I thought it was pretty level where I looked and where I was stepping; I looked as well as I could hurriedly; I saw no reason why I could not make it safely; near the ties, if I remember rightly, it was level; that is my recollection of it, and it descended rapidly a few feet farther."

*On cross-examination :*

*Q.* " Describe the manner in which you got off the car."

*A.* " Well, I remember of holding to the car in front of me with one hand; I was considerably exercised for fear that they would start. I was hurrying and using all the care and caution that I could. I remember of putting my hand on the car in front of me, but whether I had hold of anything with my right hand, I could not say. I was between the freight cars and had hold of the one in front of me with my left hand. I do not know what I had hold of with my right hand. I do not know that I could have reached anything."

*Q.* " Then you put your hand on the car and sprang to the ground ? "

*A.* " Well, yes, sir; I sprang as far as I thought necessary; was as careful as I could be."

*Q.* " Do you know the height of those cars ? "

*A.* " No, sir, I do not."

*Q.* " Can you approximate it ? "

*A.* " It would be guess work. I should think

from three to four feet; I was on the coupling between the cars."

*Q.* "The train was still there when they took you away?"

*A.* "Yes, sir."

*Q.* "When you called to Mr. Kerens to get assistance he was off the train, was he not?"

*A.* "Yes, sir."

*Q.* "He had gotten off on the ground?" *A.* "Yes, sir; I think it was from the flat car ahead of me."

The fracture was an oblique one of both bones of plaintiff's left leg. The external bone was fractured into the ankle joint; the internal bone was fractured higher up. The plaintiff, after the injury, received prompt surgical attention, was confined to his bed about ten days, and his leg kept bandaged for about two months, and then he began gradually to regain the use of it with the assistance of crutches.

The defendant offered no evidence, but at the close of plaintiff's evidence asked and the court refused an instruction in the nature of a demurrer to the evidence of the plaintiff, and thereupon the case was submitted to the jury under instructions asked for by the plaintiff, and a verdict returned in his favor for the amount for which judgment was rendered.

It is urged as ground for reversal that the court erred in refusing to sustain defendant's demurrer to the evidence and in refusing a new trial for excessive damages.

I. There is nothing in the evidence tending to show the existence of any rule, regulation or custom on defendant's road in discharging passengers from its freight trains different from those applicable to passengers upon its regular passenger trains, and the plaintiff having been received by the defendant as a passenger upon its freight train, into a car appropriated to the purpose of carrying passengers, incurred the duty of transporting him in safety, so far as his safety could be secured

by the exercise of the highest degree of care attainable by the most prudent persons engaged in the business of a common carrier of passengers for hire, to the place where its passengers were usually received and discharged in the course of its business, at the station of his destination, where it is to be presumed the defendant had provided suitable accommodations and conveniences for passengers to alight from its trains, and thence to depart from its premises and go their own way. The defendant's conductor, in requiring the defendant to get off its train at a distance from the station to which he had paid his fare, was guilty of a breach of this duty. The plaintiff, in obeying his orders and getting off the train at the place where he was directed to do so, was obeying the orders of defendant. When he landed safely on defendant's roadbed beside the caboose, he was still a passenger of the defendant to whom it owed not only the duty of transporting him on its train to its station at Harrisonville, a duty which it had refused, was then refusing, and continued to refuse to perform up to and including the moment in which the plaintiff was injured, but to whom the defendant also owed the further duty of providing for him a convenient and safe way by which he might leave defendant's train, its right of way and premises and go about his own business.

The duties that impelled the plaintiff to take passage on defendant's train were demanding his presence at the point of his destination. Thus far he had done all he could to meet the requirements of his sense of those duties, but now he was about to fail, and must fail to meet the requirements of those personal duties, unless he takes up the discharge of defendant's duty thus unexpectedly, and against his will, thrust upon him of finding a way and transporting himself to the station; to do this on foot and by the way that seemed to him most practicable was the only course left open to him; to this course he was constrained by defendant's neglect

of duty; that duty attended him however, and every step taken by him in the effort to reach the station was the direct effect of defendant's neglect of duty towards him. That the plaintiff, when he was wrongfully set afoot at a distance from, would seek to reach, the station with ordinary care and caution by the most practicable route, was to be expected and ought to have been foreseen by defendant's servants. If there was danger in that way, such danger ought to have been foreseen, and that he was liable to encounter it. If in such encounter he was injured such injury was the proximate, because the natural, although not the necessary or inevitable, result of the defendant's negligence, and for it the defendant ought to be held responsible. *Miller v. Railroad*, 90 Mo. 389.

Putting one's self then in the place of the plaintiff, when and where he was set afoot beside the defendant's caboose, ignorant of the topography of the country, and of the obstacles in his way, and uninformed as to when the train would move, what would be expected of an ordinarily prudent man in his effort to reach the station as expeditiously as he had hoped to reach it, when he entrusted himself to the defendant's care? He must go forward; he could not expect to reach it by turning back upon the track he had just passed over; a barbed-wire fence on each side forbade an attempt to leave the roadway either to the right or left to seek some other feasible route to the station; and he immediately starts forward, alongside the train upon the only route apparently open to him. He has proceeded but a short distance when he discovers that his further progress in that direction is effectually barred, except by way of the top of the flat car resting on the bridge. The conductor when he parted from the plaintiff after ordering him to disembark had passed forward on similar cars, similarly loaded, and presumably on this car over the bridge. Another passenger who had taken passage with him, at the same time and

place, and who was proceeding in the same direction on the other side of the train, mounted the car and was passing over the bridge; he followed their example, mounted the car, passed on it safely over the bridge, and to the front end of the car; "examined the ground before he got down, saw no reason why he could not make it safely;" got upon the coupling between the cars which brought him as near the ground as possible, and with one or both hands on the cars swung down, springing out from the train as far as was necessary to clear its pass way should it start, of which he was fearful, and alighted upon the ground, and in so doing his leg was broken; the train all the while standing still.

We fail to discover, in the course of his whole progress, a single movement that might not have been reasonably expected of an ordinarily prudent man, seeking to make his way expeditiously to the station from the point where the defendant had placed him ; he followed the only way the defendant had left open to him to pursue his journey.   It had caused him to alight from its train at an unsuitable and dangerous place distant from the place of his destination.   Its neglect of duty was continuous from that time up to and inclusive of the moment in which he was injured, and because of that neglect and not by reason of any act of his own volition he was compelled to resort to the car to cross the bridge and to leave the car after the bridge was crossed ; in so doing he was injured.   The neglect of duty and the injury were not only cotemporaneous and coincident, but the latter was the direct and immediate result of the former, so far as a physical effect can be the direct result of a moral cause.

There ought to be no difficulty in distinguishing such a case from those, in which a purely voluntary action intervenes between an injury, and a completed act of neglect, but for which such voluntary action might not have been taken, or from those other cases in

which the passenger has been guilty of recklessness or want of ordinary care in endeavoring to extricate himself from a situation in which he has been placed by the neglect of the carrier.

The rule that ought to obtain in this case is well stated by THOMPSON, J., in *Winkler v. Railroad*, 21 Mo. App. at page 106: "If a railway carrier, instead of discharging his passenger at the place of destination called for by the contract of carriage, lands him at another place, from which he cannot reach the place of destination by any practicable route without encountering a serious danger, and the passenger immediately thereafter, proceeding by the only practicable route to the place of destination, without fault or negligence on his part, encounters such danger and is hurt, we have no difficulty in saying that the hurt is a proximate consequence of the wrong done by the carrier. A prudent carrier would foresee such danger to the passenger, and should, we think, be held bound to foresee it and to answer the consequences of it." See also *N. Y., etc., & St. Louis Ry. Co. v. Doan*, 1 L. R. Ann. (Ind.) 157, and cases cited in note on p. 158. And in this case we have no difficulty in saying that the plaintiff's injury was the proximate result of defendant's neglect, and that no negligence of the plaintiff contributed to that injury. There was no error therefore in the action of the court in overruling defendant's demurrer to the evidence. On the evidence the plaintiff ought to have had a verdict and judgment for a reasonable amount as damages for his injury.

II. The amount of damages in cases of this kind must be left largely to the discretion of the jury, and their verdict ought not to be disturbed unless the amount is so gross as to shock the sense of justice of the judicial mind, and satisfy it that such verdict must have been the result of passion, prejudice or partiality. In view of the age of the plaintiff, his income, the physical

demands of the profession in which he earned it, that the pain he suffered seems not to have been different or greater than that usually suffered by persons of his age from a broken limb, that the cost of surgical attendance could not have been large, that he was confined to his bed but a few days and that within two months after the [injury he was able to dispense with bandages, and gradually, with the assistance of crutches, resume the use of his leg, with care, and since has suffered, and in the future will in all probability continue to suffer, only such pain and inconvenience as usually results to one of his age from a limb that has been broken, and will not be prevented from following his usual vocation, and earning as much money therein as he did before, we find it impossible to reconcile a verdict of ten thousand dollars for his injuries with our sense of justice, and must conclude that this verdict was the fruit of either prejudice or partiality, and that the amount of plaintiff's damages ought to be submitted to another jury. The judgment of the circuit court ought therefore to be reversed and the cause remanded for new trial.

In the foregoing views BLACK, J., concurs, but RAY, C. J., and SHERWOOD and BARCLAY, JJ., being of the opinion that plaintiff's evidence failed to show facts sufficient to constitute a cause of action against the defendant the judgment will simply be reversed.

## On Rehearing.

BARCLAY, J.—Upon further consideration of this case on the motion for rehearing it seems to me that the question whether or not the injury, which plaintiff sustained, was referable to the wrongful act of defendant, complained of, as a proximate cause, was a proper one to submit to the jury. The facts do not appear to me sufficiently free of doubt on that point to justify the decision of it as a question of law. That is the feature

of the case that has given me great difficulty in reaching a conclusion.

As to the question of plaintiff's alleged contributory negligence, it seems to me that it was fairly a question of fact in the circumstances here shown.   The opinion of Brother BRACE fully states the essential facts and they need not be repeated now.

This brief statement of my conclusions will probably suffice in the premises, since the cause must be retried, all my brethren agreeing that the judgment should be reversed, though not entirely united on the reasons therefor.   A majority of the court is now of opinion that, upon such reversal, the cause should be remanded for further proceedings, and that the motion for rehearing be overruled; RAY, C. J., and SHERWOOD, J., dissenting; the other judges concur.