[13290. Department One.— March 30, 1893.]

## ELVINE M. BENSON, by her Guardian, etc., Appellant, *v.* CENTRAL PACIFIC RAILROAD COMPANY, Respondent.

Negligence — Province of Jury.—Where evidence of negligence consists of circumstances from which inferences may be drawn for or against it, it is the province of the jury to determine whether there is negligence or not.

Id. — Speed of Railroad Train.—Fifteen miles per hour is not reckless or dangerous speed for a railroad train between stations outside of cities and towns.

Id. — Right to Use of Track — Duty to Persons upon Track. — A railroad company has a right to the use of its track, and may ordinarily presume that no one is upon it to be injured. It owes to persons wrongfully there no duty to look out for them that they may not be injured. Whatever duty it owes such persons arises after, and because they have been discovered there by its servants.

Id. — Carrying Passenger beyond Stations — Breach of Contract — Walking Back upon Track — Proximate Cause of Injury. — The failure of a railroad company to permit a passenger to alight at a station to which the company had contracted to carry such passenger, and its act in directing the passenger to alight at the next station, and walk back to the place of destination, although a violation by the company of its contract for which the passenger is entitled to an action of damages, does not give such passenger the right to walk back over the track to the proper station, and is not the proximate cause of an injury occasioned to the passenger while so walking upon the track.

Id. — Injury to Child — Custody of Father — Fright of Child — Liability of Railroad Company. — The failure of a railroad company to leave a girl six years of age at the station to which it had agreed to carry her, and its act in carrying her to another station beyond that at which she wished to get off, is not such negligence on the part of the company as to render it liable for an injury occasioned to her while walking back upon the track to the latter station, where it appears that the child was in the custody and control of her father, and when first seen by the engineer of the train causing the injury, was in the act of stepping from the track upon which the train was running toward the other parallel track, and did in fact reach a place of safety, but, becoming frightened, broke away from her father and ran in front of the engine, and where it appears that as soon as she was seen to be in peril every possible effort was made to prevent the injury.

Appeal from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Henry E. Highton,* and *I. B. L. Brandt,* for Appellant.

*W. H. L. Barnes,* for Respondent.

The COURT. — This action is brought by the plaintiff, an infant, to recover damages for personal injuries alleged to have been sustained by her while walking upon the roadway of defendant, by being run into by a locomotive operated by defendant.

The case was tried by a jury, which returned a verdict for defendant, and the appeal is from the judgment and from an order refusing a new trial.

Plaintiff's evidence tended to prove the following facts: —

Plaintiff, a child of but six years of age, with her father and the other members of her family, took passage on a train of defendant for Watt's Station, in Alameda County. As the train approached Watt's Station, the whole family arose and took positions at the door of the car, so as to be able to step off the train without delay, and immediately on the stoppage of the train at the station proceeded to leave it; but the stop was so short that but part of the family were able to get off, and the train moved away with the father and the plaintiff and her brother still on it. While the family was thus endeavoring to get off, the conductor of the train was on the platform of the car, and when the train began to move, the father asked him, "Why didn't you let me off?" and the conductor thereupon told the father, "You cannot get off here; you have got to go to the next station, only a short distance, and you can walk back when you get to the next station." When the next station, Emery, was reached, the father, with plaintiff and her brother, left the train. The father had never before been on the part of the railroad between Watt's and Emery Stations, and on stepping off looked up and down the railroad. He saw no cars. He could observe no other route than the railroad to get back to Watt's Station, and in fact there was no other way; one side of the railroad right of way being the waters of the bay, and the other a slough, running through marsh and swamp. There were two tracks, and supposing that if a train should come along

behind him it would be on the east track, as the train which he had just left was occupying the west track, the father started to walk southerly along the east track to Watt's Station, carrying the baby on one arm, and holding plaintiff by the hand; and he had thus proceeded for a distance of five hundred or six hundred feet south of Emery when he heard a noise back of him. Looking in the direction of the noise he saw a train, but owing to the existence of a curve in the road, it was impossible for him to determine on which track the train was running. A moment later he looked again at the train, and saw that it was on the east track, the same on which he was walking. He then left that track, crossing to the west track, and had entirely cleared the east track, continuing all the time to hold plaintiff by the hand, when the plaintiff, frightened by the approach of the train, while it was yet one hundred and fifty or two hundred feet from her, broke away from her father, and ran back to and on the east track, where she was struck by the flying train, and received the injuries complained of. The accident happened in broad daylight; the view of the railroad between the two stations, a distance of two thousand and sixty-two feet, was unobstructed; and a person standing at either station could see to, and some distance beyond, the other; and a person on the spot where plaintiff and her father were when the latter first heard the train, namely six hundred feet south of Emery Station, could easily be seen from the latter place. Plaintiff and her father were in fact noticed by the fireman of the train, according to the latter's evidence, while they were still on the track on which the train was approaching them, and were seen by him to cross over to the other track; and they were observed by the engineer when about one hundred yards from the train; notwithstanding which the train, which had pulled out of Emery Station at a speed of fifteen miles an hour, continued such speed. No bell was rung, or whistle blown, or other signal given plaintiff, and no attention paid to her presence on the track, until the train was within one hundred and fifty feet of her, when an endeavor was made to stop it, but too late to be of use.

To which must be added the uncontradicted testimony introduced by defendant, that when the engineer first saw plaintiff's father, he was in the act of stepping off the track upon which

the train was traveling toward the other track, and succeeded in getting entirely clear of the track and out of danger; and further, that the engine was provided with the best equipment known for stopping the train. That the engineer kept his eye upon the plaintiff and her father, and, as soon as she unaccountably broke from her father and ran across the track in front of the engine, every possible effort was made to prevent the injury.

Appellant contends that various erroneous instructions were given by the court to her injury, and that several instructions asked for by her were wrongfully refused—that because of these errors the question of negligence was not properly submitted to the jury.

But we think there was no evidence of negligence on the part of the defendant, and that a verdict for the plaintiff, had one been rendered, could not have been sustained; and in considering this question we shall adopt the rule laid down in *Wilson v. S. P. R. R. Co.*, 62 Cal. 172, that where the evidence of negligence consists of circumstances from which inferences may be drawn for or against it, it is the province of the jury to determine whether there was negligence or not.

There were no houses along this roadway at the point where the accident occurred, or for some considerable distance either way. The road-bed was about twenty-five feet wide, on one side of which was water and on the other marsh. Two tracks were laid over it. It is a matter of common knowledge that fifteen miles per hour is not more than one half the usual speed between stations outside of cities and towns. No one would think such speed reckless or dangerous under ordinary circumstances over this road at that point. The defendant had a right to the use of its track, and may ordinarily presume that no one is upon it to be injured. It owes to persons wrongfully there no duty to look out for them that they may not be injured. Whatever duty it owes such persons arises after, and because they have been discovered there by its servants.

When the engineer first discovered plaintiff, she was in the custody and control of her father, and was in the act of stepping from the track toward the other parallel track. The party did get off and reach a place of security. It is difficult to see

why, under such circumstances, the defendant's engineer should have made any attempt to check the speed of the train. Counsel suggest because of the fright to the child, which they assume should have been anticipated. But the child was apparently and in fact in the custody of a person of mature years, her father, who testified that he held her by the hand. Unfortunately she broke from him and ran in front of the engine. We do not think this could have been anticipated, or was caused by any negligence on the part of defendant's servants. As soon as she put herself in peril every possible effort was made to prevent the injury. So far, we think, negligence on the part of defendant could not be reasonably inferred from the circumstances.

But appellant's counsel contend that plaintiff was not wrongfully upon the roadway, but was there through the fault of defendant's servants, who carried her beyond her station in violation of the contract of defendant, and put her off at another point on their road, telling her that she could walk back That there was no other way to reach the station save by the roadway, and therefore the acts of defendant's servants in failing to permit her to alight at Watt's Station, and leaving her at Emery Station, directly and proximately caused the accident.

The failure of defendant to permit plaintiff to alight at Watt's Station, leaving her at Emery Station instead, was a violation of defendant's contract, for which plaintiff was entitled to an action for damages. She might have insisted upon her contract and perhaps have refused to alight anywhere else, or might have taken the next return train for Watt's Station, and insisted upon her right to be left at Watt's Station free of charge, but it is difficult to see how such wrong on the part of the defendant gave her a right to go back over the track to Watt's Station.

The real contention here is that defendant having carried her beyond her destination and left her, the defendant must be held to have intended that she should walk to the station, and there being no other obvious way, the wrong of defendant was the proximate cause of the danger to which she was exposed, and as a child of six years cannot be guilty of contributory negligence the defendant must be responsible.

When it is said that there was no other way back, it must be

understood that there was no direct way; we cannot suppose that Emery Station was entirely isolated from the general road system of the country. The testimony of plaintiff's father also shows that he knew that a return train was then expected upon which they could have taken passage.

The cases cited by counsel for appellant in support of this contention are cases where the common carrier violated another obligation imposed by his contract, that is, to furnish a safe place for alighting. Hutchinson on Carriers, which is referred to, says, section 617: "Such carriers must be equally careful not to pass beyond the alighting platform station, and thus to require or make it necessary for the passengers to alight without returning to it. When this has been done it is a breach of the carrier's contract, and the passenger may demand a return to the platform or station before leaving the train; and if the servant of the company in charge, without sufficient cause, refuse to return with him, but leaves him to get back by other means, the passenger will be entitled to an action and to the recovery of damages. . . . . If there should be no demand to be taken back, or refusal to do so, and no attending circumstances of aggravation, and the passenger voluntarily leaves the car, all that the passenger could rightfully claim would be compensation for the inconvenience to which he has been put. . . . . But, nevertheless, where the passenger is carried past the platform, or usual alighting place, and is required either expressly or impliedly to leave the car without assistance, and to find his way unaided to the station, during which time he receives injury, the carrier is liable."

This is evidently because the passenger was left in an unsafe position. This is made evident by the cases cited in its support. (*N. Y. R. Co.* v. *Doane*, 115 Ind. 435.) A lady passenger was carried some forty rods beyond the station and ordered to alight. The roadway was fenced by a wire fence. She discovered no way of getting out except to walk back to the station. In doing so she had to pass a cattle-pit, into which she fell. It is said: "It is also the duty of a railroad company to provide suitable stations and platforms to enable persons to enter its cars, and passengers to safely alight when they have accomplished their journey." It is also said that when passengers are required to

alight at any other place than the platform, the company is liable for injuries received in leaving such place to the same extent as it would be for defects in its own premises.

The facts in this case and the reasoning of the court clearly show that it can have no application to the case in hand. *Adams* v. *Railway Co.*, 100 Mo. 555; *Winkler* v. *R'y Co.*, 21 Mo. App. 99, and *Franklin* v. *Motor Road Co.*, 85 Cal. 63, are of the same character, and have only to be read to show their inapplicability to the case under consideration.

Here the plaintiff was left at a different station from that to which the defendant had agreed to carry her; but she was not left in a position of danger. When she left the car without asking to be carried back, and left where she ought to have been left, the contract relation between her and defendant ceased. She had a right of action against the company for the breach of their contract, but they owed her no special care because of it. It must follow that the failure to leave plaintiff at Watt's Station and carrying her to Emery Station was not the proximate cause of her injury.

The order denying the plaintiff's motion for a new trial is affirmed.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank.