CASE 4.—ACTION BY L. B. BUCKLER AGAINST THE KEN-
        TUCKY & INDIANA BRIDGE & R. R. CO., FOR
        DAMAGES FOR PERSONAL INJURIES.—March 8.

## Ky. & Ind. Bridge & R. R. Co. v. Buckler

Appeal from Jefferson Circuit Court, Common Pleas Branch (Third Division).

MATT O'DOHERTY, Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

1. Carriers—Injury to Passenger—Setting Down Passenger.—A passenger on a street car at night informed the conductor that he desired to alight at a certain street, but was carried

by, and the conductor then refused to back the car or to permit the passenger to remain on the car until it returned to the desired street, but instructed plaintiff to walk to a certain light, which he pointed out, and then turn in a certain direction, stating that such course would take the passenger to his destination, and the passenger, while following such directions walked upon a trestle and fell through it, whereby he was injured, not having known, owing to the darkness, that he was on a trestle when he fell, held, that the carrier was liable, as it was its duty to see that the passenger got safely to the desired street.

2.  Same—Contributory  Negligence—Evidence—Sufficiency.—The evidence was sufficient to sustain a finding that the pasenger was not guilty of contributory negligence.

HUMPHREY & HUMPHREY for appellant.

### POINTS AND AUTHORITIES.

1.  Carrying a passenger past his destination is not the proximate cause of his subsequent injury while walikng back along the track.   (Haley v. St. Louis Transit Co., 179 Mo., 30 (77 S. W., 731); Henry v. St. Louis, K & N. Ry. Co., 76 Mo., 228 (43 Am. Rep., 762); Benson v. Central Pacific Ry. Co., 98 Cal., 45 (32 Pac., 809.)

2.  Directions given by a conductor to a passenger, as to how the latter shall proceed after leaving the train, are not binding upon the railroad company.   (Lewis v. Flint & P. M. Ry. Co., 54 Mich., 55 (19 N. W., 744); Cincinnati, Hamilton & Dayton Ry. Co. v. Carper, 112 Ind., 26 (13 N. W., 122.)

3.  Where the evidence showing contributory negligence of the plaintiff is uncontradicted, there is no question for the jury to decide.   (Illinois Central R. R. v. Mercer, 24 Ky. Law Rep., 909.)

4.  Even though a defendant may be negligent, if the accident could not have happened but for the plaintiff's contributory negligence, the latter cannot recover.   (L. & N. R. R. v. Sights, 28 Ky. Law Rep., 186.)

5.  If the plaintiff (appellee) proved no cause of action, or if the evidence showed without contradiction that he was guilty of contributory negligence, the peremptory instruction should have been given, as asked, and this court, in reversing, should do so with directions to enter judgment in favor of the defendant (appellant.)   (3 Cyclopedia of Law and Procedure, 452; Rosenfield v. Goldsmith, 11 Ky. Law Rep., 662 (12 S. W., 928, 13 S. W., 3);

Broaddus's Devisees v. Broaddus's Heirs, 10 Bush, 299; L. & N. v. Ricketts, 21 Ky. Law Rep., 662.)

BURGERIN & DINWIDDIE for appellee.

SAMUEL AVERITT for counsel.

### POINTS AND AUTHORITIES.

1.  The apellee, a passenger, was, over his protest, carried past his station and set down in a dark and unfamiliar place. The negligence of the carrier was the proximate cause of the injuries sustained by him by a fall from a trestle in attempting to get back to his station, in accordance with the instructions of the conductor given him when he was put off the car. (New York, Chi. & St. L. Ry. Co. v. Doane, 115 Ind., 435; Winkler v. St. Louis, I. M. & Southern Ry. Co., 21 Mo. App., 99; Evans v. St. Louis, I. M. & Southern Ry. Co., 11 Mo. App., 463; Adams v. Mo. Pac. Ry. Co., 100 Mo., 566; Burnham v. Railroad Co., 91 Mich., 523; Ind. & Eastern Ry. Co. v. Barnes, 74 N. E., 583.

2.  The instructions given the appellee by appellant's conductor when he ejected appellee from the car, as to how appellee could get back to his station, were within the scope of the conductor's authority, and the appellee had the right to rely upon them. (New York, Chi. & St. Louis Ry. Co. v. Doane, 115 Ind., 435; Adams v. Mo. Pac. Ry. Co., 100 Mo., 566; Ind. & Eastern Ry. Co. v. Barnes, 74 N. E., 583.)

3.  Even if the instructions and assurances of safety given appellee by appellant's conductor were beyond the scope of the latter's authority, the appellant would still be liable. (New York, Chi. & St. Louis Ry. Co. v. Doane, 115 Ind., 435; Adams v. Mo. Pac. Ry. Co., 100 Mo., 566; Ind. & Eastern Ry. Co. v. Barnes, 74 N. E., 583; Burnham v. Railroad Co., 91 Mich., 523; Winkler v. St. Louis & I. M. & Southern Ry. Co. Co., 21 Mo. App., 99; Evans v. St. Louis, I. M. & Southern Ry. Co., 11 Mo. App., 563; Brown and wife v. Chi. Mil. & St. P. R. R. Co., 54 Wis., 342; C. & O. R. R. Co. v. Lynch, 89 S. W., 517; Ky. Central R. R. Co. v. Biddle, 17 Ky. Law Rep., 1363; L. & N. R. R. Co. v. Jenkins, 15 Ky. Law Rep., 239; L. & N. R. R. Co. v. Ballard, 10 Ky. Law Rep., 735; Horst v. R. R. Co., 93 U. S., 291; Hanson v. Mansfield R. R. Co., 38 La., 111.)

4.  The question of appellant's negligence and appellee's contributory negligence were submitted by the court to the jury in instructions even more favorable to the appellant than it was entitled to. The jury found in favor of the appellee on these

Ky. & Ind. Bridge & R. R. Co. v. Buckler.

questions.  The court will not review their finding, there being
evidence to support it.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This suit was instituted by appellee against appel-
lant for damages on account of personal injuries
received through the alleged negligence of the appel-
lant's servants.  The case was tried, and a verdict
returned in favor of appellee for $5,100.  This appeal
is prosecuted by appellant to reverse the judgment
rendered upon this verdict.

The appellee's testimony shows the following state
of facts:  That late in the afternoon on the day he
received his injuries at night he went to a steamboat
that was tied in the canal at the foot of Twenty-sixth
street, and obtained employment.  Then he started to
his sister's, in the upper end of the city, to get his
clothes to take on the trip.  A young man by the name
of Kelly, with whom he became acquainted on the
boat, went up with him.  On their return they took
passage on one of appellant's cars at First and Water
streets.  On paying their fare they informed the con-
ductor that they wanted to get off at Twenty-sixth
street; that they wanted to get to the boat, stating
where it was situated.  The car failed to stop at
Twenty-sixth street.  They called the conductor's at-
tention to the fact that he was passing without
stopping.  He stated that they could get off at the
next stop.  The car was not stopped until they arrived
at Thirtieth street.  When they arrived there they
found it dark, and were unable to see how to go to
reach their place of destination.  They protested
against getting off at that place, and requested that
the car be run back to Twenty-sixth street, or that

they be permitted to remain on the car until it returned to Twenty-sixth street, which was refused by the conductor. The conductor then told them to walk back up the track, nearly to a dim light that he pointed out to them, and then turn to the left and go towards the river, which would take them to their boat. They both testified that they had never been in that part of the city below Twenty-sixth street before; that they did not know which way to go independent of the direction given them by the conductor, and, in compliance with his instruction, they walked up the track to the place designated, where appellee turned to the left, and stepped from a trestle, falling about 12 feet, striking his breast on a stump, breaking four or five ribs, severely and permanently injuring himself. They also stated that it was so dark that they could not see and did not know they were on a trestle at the time appellee fell. The conductor, in his testimony, contradicted all of the testimony given by appellee and the witness Kelly, except that part that when they paid their fare, they said to him that they wanted to get off at Twenty-sixth street to go to a steamboat tied up at the foot of that street. The motorman corroborated the conductor with reference to the car stopping at Twenty-sixth street, but he did not hear anything said between the conductor and appellee; he being at the front end of the car. Appellee introduced testimony, in rebuttal, tending to show that the witness, who professed to be the conductor, was not the conductor on the car on which appellee and the witness Kelly were on the night of the injury. Appellant makes no contention as to the extent of appellee's injury, nor to the amount of the verdict; but claims that the carrying of him beyond his destination was not the proximate cause of his subsequent injuries

while attempting to get back to his place of destination; that appellant is not responsible for the injuries received by appellee as the result of misdirections of its conductor; that, if the conductor gave appellee directions how to reach his place of destination, it was not within the scope of his employment, and not binding upon appellant, and, further, that the injuries received by appellee were the result of his own contributory negligence.

Appellee and his companion were left at the place stated, virtually out of the city, with obstructions on either side of the track which made it dangerous for them to attempt to leave, not knowing which way to go to reach their place of destination other than to follow the directions of the conductor. Their boat was to leave in a short time. The question is: Under these circumstances, what action would an ordinarily prudent man have taken? Was he required to stand there until daylight? Was it more prudent, not knowing the surroundings, to start out at random in the darkness? Or was it more prudent for him to rely upon the instructions and assurances of safety offered him by the conductor, and go in the direction pointed out by him, and turn at the point indicated? The decided weight of authority is to the effect that when one is carried beyond his station, or stopped short of it, and is directed by the conductor to alight from the train, the passenger, being ignorant of the surroundings and dangers that might befall him while attempting to get to his station with or without the directions of the person in charge of the car, receives an injury while exercising ordinary care for his own safety, the company is responsible to him in damages. In such a case the company has not performed its contract, and, in effect, he is still a passenger until he reaches

the station; and the injury received is the proximate result of the wrong done him.

In the case of New York, Chicago & St. Louis Railway Co. v. Doane, 115 Ind., 435, 17 N. E. 913, 1 L. R. A. 157, 7 Am. St. Rep. 451, the railroad company carried Mrs. Doane 80 or 90 rods beyond her station, where she was requested to and did alight from the car, and, in attempting to get back to the station, she fell into a cattlepit, breaking her arm. In that case the court said: "It also failed to perform a plain and very urgent duty when it neglected to either back its train to a convenient point near the station, or to give her such assistance or instructions as were necessary to assure her safe return to the station house after it had carried her beyond her place of destination. The duty of a railroad company as a common carrier of passengers is not fully performed until it delivers its passenger in proper condition at the station to which he has paid his fare. Mrs. Doane was not guilty of negligence in failing to discover some gates leading into private inclosures, and into an open and remote field through which she might have returned to the station by an unmarked and circuitous route. It was, under the circumstances, not only natural, but reasonable, aside from any directions or intimations which the conductor may have given her, that she would have attempted to follow the railway track back to the station house. Until she reached that point, she was still constructively a passenger on the railway train, and had a right to rely upon the information or directions which she may have received from the conductor."

In the case of Adams v. Missouri Pacific Railway Co., 100 Mo. 555, 12 S. W. 637, 13 S. W. 509, the passenger was caused to alight from the train about a

quarter of a mile before it reached the station. He found the path leading to the platform blocked by a coal car, and, finding no other way out climbed over it and jumped down on the other side, sustaining the injuries for which he sued. In defense it was urged that the injuries were not the proximate result of the defendant's negligence. Of this the court said: ''The defendant's conductor, in requiring the plaintiff to get off of its train at a distance from the station to which he had paid his fare, was guilty of a breach of his duty. The plaintiff, in obeying his orders and getting off the train at the place where he was directed to do so, was obeying the orders of defendant. When he landed safely on defendant's roadbed beside the caboose, he was still a passenger of the defendant, to whom it owed not only the duty of transporting him on its train to its station at Harrisonville, a duty which it had refused was then refusing and continued to refuse to perform up to and including the moment in which the plaintiff was injured, but to whom the defendant also owed the further duty of providing for him a convenient and safe way by which he might leave defendant's train, its right of way and premises, and go about his own business. The duties that impelled the plaintiff to take passage on defendant's train were demanding his presence at the point of his destination. Thus far he had done all he could to meet the requirements of his sense of those duties, but now he was about to fail, and must fail to meet the requirements of those personal duties unless he takes up the discharge of defendant's duty thus unexpectedly, and against his will, thrust upon him, of finding a way and transporting himself to the station. To do this on foot and by the way that seemed to him most practicable was the only course

left open to him. To this course he was constrained by defendant's neglect of duty. That duty attending him, however, and every step taken by him in the effort to reach the station, was the direct effect of defendant's neglect of duty towards him. That the plaintiff, when he was wrongfully set afoot at a distance from, would seek to reach, the station with ordinary care and caution by the most practicable route, was to be expected, and ought to have been foreseen, by defendant's servants. If there was danger in that way, such danger ought to have been foreseen, and that he was liable to encounter it. If in such encounter he was injured, such injury was the proximate, because the natural, although not the necessary or inevitable, result of the defendant's negligence, and for it the defendant ought to be held responsible."

In the case of Winkler v. St. Louis, Iron Mountain & Southern Railway Company, 21 Mo. App. 99, the appellant was taken beyond his station in the nighttime. When his station was called, he arose and was directed to go out of the rear end of the car, which he did when the car stopped. His testimony was that the night was very dark, and continued, in substance, as follows: "After we alighted on the ground the conductor said, 'Stand still till we pull out, and then you will be all right;' and immediately pulled the train out. We looked around and could not see the depot and were bewildered, and did not know where we were. We deliberated as to what we would do. It was about 2 or 3 o'clock in the morning; think this point was below the station about 300 yards, but it seemed that night about a quarter of a mile. After a short deliberation, and noting the surroundings, we started back. We were following the railroad track. We could not see any other road to follow by reason

of the darkness. I was walking on the track and could not distinguish the ties and space between them. It was very dark. I suddenly fell, one foot going through the timbers of the trestle.'' The evidence of Winkler was corroborated by a traveling companion. That case and the one at bar are almost alike. The claim was made by the appellant in that case that the injury received by Winkler was not the proximate result of the appellant's wrong in carrying him past his station and putting him off at another point. The court in that case also said: ''If a passenger, instead of being discharged at the place called for in the contract of carriage, is discharged in the night-time at another place, so that in getting to his place of destination it becomes necessary to walk along a path containing a dangerous obstruction, it is not too much to say that the danger of his being injured by such obstruction is a danger which the carrier ought to foresee, and that it is not an unnatural, improbable, or remote consequence of the act of discharging the passenger in such a place.''

See, also, the cases of Patten v. Railroad Company, 32 Wis. 524; Burnham v. Railroad Company, 91 Mich. 523, 52 N. W. 14, and Kentucky Central Railroad v. Biddle, 34 S. W. 904, 17 Ky. Law Rep. 1363. The last case was where two young ladies were carried beyond their station. They walked back to it, and sued the company for damages, and the court said: ''On the other hand, the walk of the appellees was clearly in consequence of the negligence of the conductor. They might have sought and obtained shelter among the strangers by whom they were surrounded, but were not bound to under the circumstances surrounding them. The injuries resulting from their walk are the proximate results of the failure of the train to stop

at Garnett.'' The cases cited by appellant's counsel in the main do not apply to the facts of this case.

In the case of Lewis v. Flint & P. M. Ry. Co., 54 Mich. 55, 19 N. W. 744, 52 Am. Rep. 790, the plaintiff was carried some distance beyond his station. This fact he knew when he left the train. He asked the conductor about the matter, and was informed that he had been carried beyond his station about two car lengths. He said, if that was the case, it did not matter, and got off the train. Soon afterwards he discovered that the conductor was mistaken, or at least had misinformed him, as to the distance they had passed the station, and in trying to reach the highway, for which he was bound in the first instance, he stepped into a ditch and was injured. The syllabus of the case states: ''Plaintiff knew the neighborhood, and knew where the road crossed the track there were cattle guards and culverts on both sides of it.'' In the case at bar appellee did not know there was a trestle up the track from which he might fall. In the case referred to plaintiff voluntarily left the train, merely asking the conductor's opinion as to how far beyond the station he had run. In the case at bar appellee objected to being required to leave the car, and did so under protest. The conductor knew the trestle was up the track, but did not inform appellee of it, and appellee did not know it.

In the case of Cincinnati, Hamilton & Indianapolis Railroad Co. v. Carper, 112 Ind. 26, 13 N. E. 122, 14 N. E. 352, 2 Am. St. Rep. 144, the plaintiff's intestate through his own mistake boarded the wrong train. The mistake was discovered after the train had passed over a bridge or trestle. The train was stopped for him, and he got off for the purpose of going back to the station and boarding the train he

intended to leave on. As he did so, he inquired of the conductor as to the best way to get back to the station. The conductor gave it as his opinion that the best way for him to get back was to proceed along the railroad track, which he did, and while he was upon the trestle another train came along and killed him. As stated, he had boarded the train through his own mistake, to which the defendant had in no way contributed. He left the train voluntarily as being the best thing possible for him to do under the circumstances. The court held that the act of the conductor in advising him as to the best way to get back to the station was not within the scope of the conductor's authority. The case is not like the one at bar. The defendant was not responsible for his mistake in getting on the train. It owed him no duty to back the train to the station. If it had owed him any such duty, he waived it by voluntarily getting off the train. When he had gotten off the train in safety, the company was no longer responsible to him for any injury he might receive; but the court in that case said: "If the conductor had refused to carry the deceased to a regular station, or had compelled him to leave the train, an essentially different question would have faced us; but the passenger here leaves the train without complaint. It is not the theory of the complaint that the conductor put the deceased off the train at an improper place. The case is not, therefore, controlled by the authorities upon that general subject." Plainly admitting that had the conductor put him off at an improper place, the rule would have been different.

The case of Haley v. St. Louis Transit Co., 179 Mo. 30, 77 S. W. 731, 64 L. R. A. 295, was against a street railway. The plaintiff was carried one square beyond her destination in a city, and in walking back

on the icy pavement she fell and received the injury for which she sued. A different rule is applicable to a case of that kind. The plaintiff was deposited at a safe place in daylight in the streets of a city, and, while she might have had a cause of action.for being carried beyond the place at which she was to alight, she could not recover damages for personal injuries plainly brought about by an intervening cause. It was not shown that there was no ice at the place where she desired to alight, and the presumption is that there was ice on the pavements all over the city; and she was as likely to fall at the place she desired to alight as any other.

In the case of Benson v. Central Pacific Ry. Co. 98 Cal. 45, 32 Pac. 809, the appellant, a little girl, was walking back with her father along the railroad track, after having been carried beyond her destination, when they were caught by another train. They had, however, left the track when the child broke away from her father and ran back in front of the train. This case is not like the case at bar on account of the manifest difference of the facts. The court distinguishes the facts of that case from the case of New York, Chicago & St. Louis Railway Co. v. Doane.

Under the facts proven by appellee, it was the duty of appellant to see that the appellee got safely to Twenty-sixth street. Appellant might have accomplished this end in several ways. It might have stopped its car at Twenty-sixth street and allowed appellee to alight; it might have backed its car from Thirtieth to Twenty-sixth street, as he demanded; it might have allowed appellee to remain on the car until the return trip—each of which it refused to do. If appellant chose rather than to do either one of these things, to take some other means of getting

appellee to his destination, if it chose to take chances, directing him how to go back unaided from the place where it wrongfully deposited him, then it cannot be heard to say that the injuries which the appellee received were not directly the result of these wrongful acts and not the proximate result of the same.

The court submitted to the jury, by proper instructions, the question whether the appellee, under the circumstances, acted as a reasonably prudent man would; and the jury, by its verdict, decided that he did. The question of contributory negligence was also submitted under proper instructions to the jury and the jury found against appellant. The instructions as a whole were as favorable to appellant as it could have asked.

For these reasons the judgment of the lower court is affirmed.