The New York, Chicago and St. Louis Railway Company v. Doane.

No. 12,665.

THE NEW YORK, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. DOANE.

115   435
143   131

115   435
152   438
152   670

NEGLIGENCE.—*Railroad.*—*Carrier of Passengers.*—*Freight Train.*—It ,is the duty of a railroad company, engaged in the transportation of passengers, whether by freight or passenger trains, to so run and manage its trains, and to so handle its passengers, that no one shall be injured by its own negligence.

SAME.—*Passenger on Freight Train.*—*Rights of.*—*Liability of Railroad Company.*—If a railroad company admits a person into a caboose attached to a freight train, to be transported as a passenger, and takes the customary fare for his transportation as such, it incurs the same liability for his safety as though he had taken passage in one of its regular passenger coaches.

SAME.—*Stations and Platforms.*—*Duty of Carrier to Passenger.*—It is the duty of a railroad company to provide suitable stations and platforms to enable passengers to enter its cars and alight therefrom with safety, to stop its trains at the station so that passengers may alight upon the platform, and if passengers are required to alight at any other point, the company is liable for any injuries resulting thereby to such passengers.

SAME.—*Exceptions as to Freight Trains.*—Where a freight train is accustomed to discharge its passengers at some place other than the platform, or where it is impracticable for it to reach the platform with the caboose or car in which passengers are carried, the passengers may be required to leave the train at some other appropriate and convenient place not connected with the platform; but in such case the passengers are entitled to receive such care and attention as are necessary to enable them to properly reach the station.

SAME.—*Rights of Passenger.*—*Liability of Carrier.*—The duty of a railroad company as a common carrier of passengers is not performed until it delivers its passenger in proper condition at the station to which he has paid his fare; and where a passenger on a railroad train is carried past his point of destination, it is the duty of those in charge of the train to either back the same to the station, or to notify the passenger how and where to alight, warn him of any dangers incident to alighting at that point, and give him such assistance or instructions as may be necessary to assure his safe return to the station; and if, without the fault of the passenger, he is injured in making his way back to the station, the company is liable therefor.

From the Kosciusko Circuit Court.

*J. B. Cohrs, J. S. Frazer* and *W. D. Frazer,* for appellant.
*J. D. Widaman* and *J. W. Cook,* for appellee.

NIBLACK, C. J.—Notwithstanding some discrepancies between witnesses on certain matters of minor importance, there was evidence in this case very strongly tending to establish the following facts: That, during the year 1883, as well as since that time, the appellant, the New York, Chicago and St. Louis Railway Company, ran a train of cars, known as a local freight train, daily over its line of road, between a point near the city of Chicago, in the State of Illinois, and the city of Fort Wayne, in this State; that it was in the habit of carrying passengers in a caboose attached to the rear end of that train, between all the stations on that part of its line of road; that the appellee, Rebecca Doane, on the 18th day of June, 1883, entered the caboose of that train, at a station on the road known as Mentone, for the purpose of being conveyed as a passenger to a station nine or ten miles further east called Claypool, and paid to the conductor of the train the amount demanded by him for transportation to the station last named; that there was a depot, or station-house, with a platform forty or fifty feet long attached, on the north side of the road at Claypool; that the train consisted of near, if not quite, thirty cars; that when it reached Claypool it stopped alongside of the platform, the caboose standing on the track at least several lengths of cars, and probably several hundred feet, west of the platform; that several freight cars were at the time standing on a switch on the south side of, and immediately adjacent to, the caboose; that on the north side of the caboose a ditch, containing some water, several feet deep and four or five feet wide, ran along, near and parallel with the railway track; that Mrs. Doane was unable to see any safe or convenient way of getting out of, or away from, the caboose; that there was a plank across the ditch, some fifty or sixty feet east of the caboose, over which persons sometimes walked, but the strip of ground

between the ditch and the railway track was so narrow as to make it impracticable for her to attempt to reach the plank, with her two bundles of baggage, which she was carrying with her; that, being told by one of her fellow-passengers that the train would probably pull up to and let her off at the platform, she remained in the caboose; that at or about the time the train stopped, the conductor, and the only brakeman then near it, left the caboose without giving Mrs. Doane any directions as to how or when she could safely leave the train, and without offering her any assistance in leaving it; that before leaving the caboose the brakeman announced the name of the station, but from dullness of hearing, or some other cause, she did not hear the announcement; that she was, however, otherwise informed that the train was approaching Claypool; that after the expiration of fifteen or twenty minutes the train proceeded on its way east, without stopping at the platform; that in passing the platform the conductor stepped from it into the caboose, and, seeing that Mrs. Doane was still on the train, he climbed on top and gave the necessary signal to have the train stopped; that the train was stopped accordingly on a curve eighty or ninety rods away from, but still in sight of, the station-house; that Mrs. Doane thereupon demanded that she should be returned to the station by backing up the train, but the conductor declined to so back up the train, and requested her to get off where the train then was, which, with his assistance, she did, the locality being one with which she was entirely unacquainted; that on her reaching the ground, the conductor either said or did something which impressed her with the belief that she could easily get back to the station by walking on the railway track, and that this was the best route for her to take; that where she left the train there was a wire fence, consisting in part of barbed wires, on both sides of the railway track, running back to a railroad crossing near the station-house; that, seeing no other way open to her, she, with her bundles, started along the track in the direction of the sta-

tion-house; that she had proceeded only a short distance when she came to a cattle-pit, from which plank fences three or four feet high extended each way to the respective wire fences; that, realizing the danger there might be in attempting to pass over the cattle-pit, but failing to observe any means of getting around it, and fearing she might be caught by some other passing train, she stepped upon, and started to walk over, the cattle-pit, exercising as much care as was consistent with her then excited and very nervous condition; that, when about half-way across the cattle-pit, she fell and broke one of her arms near the wrist, and was otherwise bruised and injured; that, with the assistance of a gentleman who came to her relief, she got back to the station-house, where she received surgical aid and attention; that the injury to her arm had proved to be a very painful and permanent injury; that her wrist had not regained, and never would regain, its normal condition, her arm being thus left in a maimed and weakened predicament.

It was also shown that somewhere, not far from where Mrs. Doane left the train, there was a gate on the north side of the road, which opened into a private lane running north through a farm; that some distance further north there was another gate on the west side of the lane, which led into an open field; that she might have gone through these two gates and thence through the open field, and by a circuitous route, have reached the station-house without walking upon the railway track, but she had no knowledge of the fact that she might get to the station-house in that way, and nothing occurred to direct her attention to the practicability of her getting back by that or any other route outside of the railway track.

A jury returned a verdict in favor of Mrs. Doane, assessing her damages at one thousand dollars, and, over exceptions reserved, judgment was given upon the verdict.

Error is assigned upon the overruling of a demurrer to

the complaint, which consisted of two paragraphs, and the refusal of the circuit court to grant a new trial.

In support of the errors assigned, it is sought to be maintained in argument :

*First.* That upon the facts contained in the complaint, and substantially proven at the trial, Mrs. Doane was guilty of contributory negligence in not leaving the caboose when the train stopped at Claypool, and also in attempting to walk back along the railway track, and over the cattle-pit, after she left the train.

*Secondly.* That, upon the facts as stated, the injury complained of was too remote to constitute a cause of action against the railway company.

*Thirdly.* That the damages assessed were, in any view which ought to be taken of the facts as proven, excessive.

*Fourthly.* That certain instructions given to the jury were erroneous.

A railroad company may refuse to carry passengers on its freight trains, but if it admits a person into a caboose attached to one of its freight trains, to be transported as a passenger, and takes the customary fare for his transportation as such, it incurs the same liability for his safety as though he had taken passage in one of its regular passenger coaches.

It is neither expected nor required that a passenger upon a freight train shall be provided with all the comforts and conveniences which are usually afforded passengers on a regular passenger train, but there is, on that account, no diminution in the obligation of those in charge of the freight train to carry its passengers with becoming and all necessary care, and to deliver them safely at, or conveniently near, their respective places of destination. It is the duty of a railroad company engaged in the transportation of passengers, whether by freight or passenger trains, to so run and manage its trains, and to so handle its passengers, that no one shall be injured by its own negligence. 2 Wood Railway Law, 1121, *et seq.;*

*Ohio, etc., R. W. Co.* v. *Selby*, 47 Ind. 471 (17 Am. R. 719) ;
*Ohio, etc., R. W. Co.* v. *Dickerson*, 59 Ind. 317.

It is, also, the duty of a railroad company to provide suitable stations and platforms to enable persons to enter its cars, and passengers to safely alight when they have accomplished their journey.    As pertinent to that duty, Wood, *supra*, at section 305, on page 1123, says, and we have no doubt correctly, that " The trains must be stopped at the station so that passengers can alight upon the platform, and if they are stopped at any other place, and the station is called, so that passengers are required, or have a right to understand that they are required to stop there, the company is liable for injuries received in leaving such place, to the same extent and upon the same ground that it would be liable for injuries received from the defectiveness of its own premises.    *White Water R. R. Co.* v. *Butler*, 112 Ind. 598.

These general principles apply as well to the carrying of passengers by freight as by passenger trains, subject only to such modifications as are made necessary by the nature of the business in which freight trains may be engaged.    Where a freight train is accustomed to discharge its passengers at some place other than the platform, or where it is impracticable for it to reach the platform with its caboose, or other car in which its passengers are carried, it may require passengers to leave its train at some other appropriate and convenient place, not connected with the platform.    In such an event, however, passengers are entitled to receive such care and attention as are necessary to enable them to properly reach the station, and this is especially so where the place at which they are discharged is either inappropriate or inconvenient.    *Woolery* v. *Louisville, etc., R. W. Co.*, 107 Ind. 381. Further on, at page 1186, the same author says that " If the train overshoots or stops short of the platform at an unusual place, it is held that the company is bound to assist the passengers to alight, and in any event, in such a case it would be its duty to either back the train to the station or

notify the passengers where and how to alight, and warn them of any dangers incident to alighting at that point; and if through no fault of the passenger, he is injured by alighting at that point, or in getting from there to the station or highway, the company is liable therefor."

Applying these principles to the facts of this case, the railway company failed in its duty in not either stopping the caboose at the platform at Claypool, or assisting Mrs. Doane to alight from the train when it stopped west of that place, and to reach the station in safety. Under all the circumstances, she was justified in not leaving the caboose where it stopped, as well as in inferring that it would be pulled up to the platform before leaving the station. It also failed to perform a plain and very urgent duty when it neglected to either back its train to a convenient point near the station, or to give her such assistance or instructions as were necessary to assure her safe return to the station-house after it had carried her beyond her place of destination. The duty of a railroad company as a common carrier of passengers is not fully performed until it delivers its passenger in proper condition at the station to which he has paid his fare.

Mrs. Doane was not guilty of negligence in failing to discover some gates leading into private enclosures, and into an open and remote field through which she might have returned to the station by an unmarked and circuitous route. It was, under the circumstances, not only natural, but reasonable, aside from any directions or intimations which the conductor may have given her, that she should have attempted to follow the railway track back to the station-house. Until she reached that point, she was still constructively a passenger on the railway train, and had a right to rely upon any information or directions which she may have received from the conductor. See Wood, *supra*, pp. 1124, 1125, 1126.

Nor was Mrs. Doane guilty of contributory negligence in her effort to walk over the cattle-pit. It was important to

her that she should pass that place in some way, and within a reasonable time, and no other practicable method of passing it was apparently open to her.

It is a matter within the common knowledge of all, that a person may, by the exercise of a high degree of care, ordinarily walk with safety over a cattle-pit. But a cattle-pit is not a suitable place to compel a passenger to walk over to reach the end of his journey, and it was negligence on the part of the railway company to place her in a position which seemingly required her to incur the hazard of walking upon such a place. It is an old rule, that where one person places another in such a situation that the latter must adopt a perilous alternative, the former is responsible for the consequences. *Jones* v. *Boyce*, 1 Starkie, 402.

A practical application of this rule, in aid of the general principles previously announced as above, leads us to the further conclusion that the injuries to Mrs. Doane were proximately caused by the negligence of the railway company. This view is fully sustained by the cases of *Cincinnati, etc., R. R. Co.* v. *Eaton*, 94 Ind. 474, and *Terre Haute, etc., R. R. Co.* v. *Buck*, 96 Ind. 346.

Nothing is shown from which we can infer that the damages were excessive. Notwithstanding Mrs. Doane had, at the time of her injuries, passed the meridian of life, the maiming and permanent disabling of her arm was no trivial matter to her. She thereby became very materially less able to earn her own living (which she had been accustomed to do), for the rest of her life. The amount she recovered impresses us as a very moderate compensation for the injuries for which she sued.

Objections are specifically made to some of the instructions given to the jury, but none of the instructions complained of are inconsistent with the legal principles we have applied to the evidence, and hence what we have already said practically disposes of all the questions made upon the instruc-

tions. Having in view the same legal principles, the demurrer to the complaint was rightly overruled.

The judgment is affirmed, with costs.

