# Alabama City G. & A. Ry. Co. *v.* Cox.

*Injury to Passenger.*

(Decided June 17, 1911.   55 South. 909.)

1. *Carriers; Breach of Contract; Passengers.*—Where the action was for injury received by a passenger while attempting to walk back to the station after being carried beyond it, it was immaterial whether the carrier's conductor knew that the passenger did not know of a safe route from the point where she alighted, back to her station, or that the trainmen had reason to believe that the passenger would encounter danger.

:[Alabama City G. & A. Ry. Co. v. Cox.]

2. *Same; Complaint; Sufficiency.*—In an action by a passenger for injuries received while returning to a station beyond which he had been negligently carried, the complaint need not negative the fact that there was an open, obvious and safe way which the passenger could have traveled back to the station, since such facts were available in defense.

3: *Same; Carrying Beyond Destination; Liability.*—Where it was undisputed that a carrier stopped its train beyond a station, and that a passenger destined for that station alighted at night to walk back to that station, that she was aged and feeble, and was injured when attempting to walk back to the station, but there was a conflict in the evidence as to whether the train stopped at the station for the reception and discharge of passengers, the question of the liability of the carrier was one for the jury.

4. *Same; Complaint.*—A complaint for injuries to a passenger carried beyond her destination and required to alight and walk back to the station need not allege that her eyesight was defective, or that she could not see at night, or that her affliction was apparent to the conductor, in order to state a cause of action.

5. *Same.*—The fact that a passenger carried beyond her station pursued a dangerous way back to the station, when a safe way was obvious and open to her selection was available only in support of the defense of contributory negligence, and need not have been negatived by the complaint.

6. *Same; Continuance of Relation.*—The relation of passenger and carrier continues to exist until the passenger has had reasonable time and opportunity to alight from a train and leave the carrier's premises in the ordinary way.

7. *Same; Defenses.*—In the absence of any allegation in the complaint as to defective eyesight, a defendant believing that the injuries were caused from the defective eysight of the plaintiff must by special plea allege such facts in order to make them available as a defense.

8. *Charge of Court; Requisites.*—Instructions must refer to and be hypothesized upon the evidence in the case.

9. *Same; Construction.*—Where a charge as a whole correctly states the law, it will be held sufficient although isolated portions thereof may be erroneous.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by Mary E. Cox against Alabama City, Gadsden & Attalla Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The complaint consisted of four counts, and, as amended, count 1 states the relation between the parties to have been that of passenger and carrier, the pay-

ment of fare, the information to the conductor in charge of the car that the plaintiff desired to alight at Car Works station, and the negligent failure of the servants or agents of the defendant in charge of the car to stop said car at said station, which was a regular and convenient place for passengers to alight, and which was located on the public highway, coupled with the further allegation that the servants or agents in charge of the car negligently allowed said car to pass by and beyond said station 40 yards or more before stopping said car. Then follows the catalogue of her injuries, which are alleged to be permanent. It is also averred that the only apparent way to plaintiff or open way for her to return to said station from the point where she was put off was along defendant's line of railway. This was well known to the conductor, or by the exercise of ordinary diligence should have been known to him; but the existence of the railroad crossing on said line of railway, and the existence of the trestle or culvert between the point where plaintiff was put off and the station of her destination, rendered said way dangerous to be traveled by plaintiff at the time and under the circumstances stated. The second count was charged out. The third count alleges the plaintiff's injuries to have resulted proximately from the negligence of the conductor in charge of the car upon which she was a passenger, in that at the time he caused plaintiff to alight from said car he knew, or by the exercise of ordinary diligence ought to have known, that plaintiff would probably return to the Car Works station by walking along defendant's railway track, and also knew of the existence of said railway crossing, and said trestle or culvert, and also knew, or by the exercise of reasonable diligence could have known, that the existence of such crossing or culvert or trestle rendered it dangerous to plaintiff to walk

along said railroad track to said Car Works station, without the knowledge of existence of such switch and culvert or trestle, and also knew, or by the exercise of ordinary diligence should have known, that the existence of the conditions above mentioned were unknown to plaintiff, and negligently failed to notify or warn plaintiff of the existence of said railroad crossing, and of the existence of said switch, or trestle, or culvert. The fourth count avers the negligent carrying of plaintiff beyond her destination, and the negligent failure to stop at the station, with the further averment that the route which she took to travel back to such station was the one which a reasonably prudent person would have taken under the circumstances surrounding plaintiff at the time. The demurrers raise the point discussed in the opinion.

The charges referred to in the opinion are as follows: (5) "If the injuries resulting to plaintiff were proximately caused by the defective eyesight of plaintiff, she cannot recover." (6) "If the defect of eyesight of plaintiff was an intervening sufficient cause of her injury, she is not entitled to recover." (7) "The court charges the jury that the plaintiff in her complaint does charge that her injuries were caused by her defective eyesight, not that the defective condition of her eyesight contributed to her injuries. If the jury are satisfied from the evidence that plaintiff's injuries were proximately caused by the defective eyesight, she cannot recover." (8) "If the plaintiff's injuries would likely not have occurred, had it not been for the defective condition of plaintiff's eyesight, she cannot recover." (9) "If the jury are reasonably satisfied from the evidence that plaintiff's injury would not have occurred, had it not been for the defective condition of her eyesight, she cannot recover."

[Alabama City G. & A. Ry. Co. v. Cox.]

HOOD & MURPHREE, for appellant. The complaint was subject to demurrers interposed.—*Sellers' case,* 93 Ala. 9; *Quick's case,* 126 Ala. 564; *Dancy's case,* 97 Ala. 338; *Morgan's case,* 49 South. 865. The court erred in its oral charge to the jury, and in refusing the charges requested by appellant.—Authorities, supra.

GOODHUE & BLACKWOOD, for appellee. No brief reached the reporter.

MAYFIELD, J.—The appellee, a woman about 60 or 65 years of age, sued appellant, a common carrier of passengers.

Each count of the complaint upon which the trial was had, as last amended, alleged the relation of passenger and common carrier between plaintiff and defendant, and therefrom a duty on the part of the latter to carry plaintiff as a passenger, in accordance with a contract alleged, from the city of Gadsden to a station upon its line known as Car Works station; and then alleged a breach of that duty, in that the carrier failed to stop its car at the station of the plaintiff's destination, but carried her by and beyond it some 40 yards or more, and there put her off; that the plaintiff, in attempting to find her way back to the station, fell over a switch of defendant's railway, and thereby injured herself; and that later, while still on her way back to the station, along the defendant's railway track, she stepped into an open culvert or trestle, thereby severely injuring herself. Each count contains the usual and appropriate averments as to the injuries and damages suffered by the plaintiff; and each alleges that such injuries and damages were the proximate result of the negligence of the defendant's agents or servants in charge of the car, in failing to put her off at her station, and carrying her

such a distance beyond it in the night time. Each count of the complaint, as last amended, stated a good cause of action, and was not subject to any grounds of demurrer assigned as error.

It was not necessary that the complaint should allege that the defendant's conductor was cognizant that the plaintifffff did not know of a safe route from the point where she alighted back to the station; nor that the defendant's servants or agents had reason to believe that the plaintiff would encounter danger at the place and time, and in the manner, alleged. It was the duty of the defendant to put the plaintiff off at her station, and not some 40 yards beyond it.

It was not necessary for the complaint to negative the fact that there was an open, obvious, and safe way, which the plaintiff could have traveled, from the point where she was put off, back to the station. If this were so, it would be proper matter for a plea, and not for the complaint to negative.

The complaint averred the advanced age and feeble conditions of the plaintiff, and that it was in the nighttime that she was carried some 40 yards past her station; this being an actionable breach of duty on the part of the defendant toward the plaintiff. If the defendant's servants or agents in charge or control of the car on this occasion had actual knowledge of the plaintiff's infirmities, and of the danger which she would probably incur in consequence of the breach, such fact would be proper to go to the amount of the damages recoverable; but it is not necessary to the recovery of any damages, and is therefore not necessary to the statement of a good cause of action.

"Carriers must be equally careful not to pass beyond the alighting platform or station, and thus to require or make it necessary for the passenger to alight without returning to it. * * * And where the passen-

ger is required, either expressly or impliedly, to leave the car without assistance, and to find his way unaided back to the station, during which time he received injury, the carrier is liable. This is held to be true, even though the passenger is carried upon a freight train. Much less does the carrier discharge his duty where he puts the passenger off away from the depot, at night, in a strange place, and requires him thence to return to the place at which he should have been discharged." —2 Hutchinson on Carriers, § 1126.

"As a general rule, it may be said that the relation of carrier and passenger does not cease with the arrival of the train at the passenger's destination, but continues until the passenger has had a reasonable time and opportunity to safely alight from the train at the place provided by the carrier for the discharge of passengers, and to leave the carrier's premises in the customary manner."—*Ib.*, § 1016.

"Where a passenger signaled a street car conductor to put her off at a given stopping place, and the conductor understood the signal, but failed to put her off at the proper station, held to be culpable negligence, and that if the plaintiff, while attempting to cross the track to go to her home, fell and suffered injury on account of being put off at the wrong place, the carrier would be liable."—*Melton v. Railway Co.*, 153 Ala. 95, 45 South. 151, 16 L. R. A. (N. S.) 467.

"Passengers are entitled to be carried to their destination, and carriers have no right to put them off the train before reaching it."—*L. & N. R. R. Co. v. Quinn*, 146 Ala. 330, 39 South. 756.

"It is the duty of the conductor of a common carrier to take up the tickets within a reasonable time after leaving a station, and when he takes up the ticket to a flag station, it is notice to him that the passenger de-

sires to get off at such station."—*L. & N. R. R. Co. v. Seale*, 160 Ala. 584, 49 South. 323.

"It is the duty of common carriers to stop their trains at their stations long enough to allow passengers a reasonable time in which to alight. What is a sufficient time is usually a question for the jury."—*Dilburn v. L. & N. R. R. Co.*, 156 Ala. 28, 47 South. 210.

"It is the duty of common carriers, such as street car companies, to exercise the highest degree of care in stopping their cars for passengers to alight, and in providing a reasonably safe place for them to alight."—*Mobile Light Co. v. Walsh*, 146 Ala. 295, 40 South. 560.

"Common carriers are liable in damages to passengers who are carried beyond their destination without fault on the part of the passenger, whether resulting from the negligence of the carrier or a breach of his contract."—*North Ala. Co. v. Daniel*, 158 Ala. 414, 48 South. 50.

Whether the car stopped at the station on this occasion for the reception or discharge of passengers was a disputed question, and the defendant was not entitled to the affirmative charge on the theory that the car was stopped at the plaintiff's destination. The evidence is without dispute that it did stop beyond the station (though the exact distance is in dispute), that the plaintiff was put off the car beyond her station, at night, that she was aged and feeble, and that she was injured in the manner alleged, while attempting to find her way back to the station.

It was not necessary that the complaint should allege that the appellee's eyesight was defective, or that she could not see at night, nor for the complaint to allege, nor the evidence to show, that this affliction was apparent to the conductor, in order to state a cause of action. As before stated, such allegations or proof might be proper or necessary as to punitive damages,

and therefore go to the amount of the recovery, but not to the absolute right of recovery, as is insisted by the appellant in this case.

If the plaintiff pursued a dangerous way back to the station, when a safe path was obvious and open to her selection, this would be matter proper for a plea of contributory negligence, and it was not necessary for the plaintiff to negative it in her pleadings, nor was she required to prove such negative matter, in order to entitle her to recover.

The trial court, among other things, charged the jury that: "Passengers who take passage on a street car remain passengers until they get to their destination, and this relation of passenger and common carrier would exist between the passenger and the defendant until she got back to her place of destination." Again the court charged that: "The relation of passenger and common carrier would exist between the passenger and the defendant until she got back to her place of destination." If there can be said to be any erroneous or misleading tendencies in these excerpts from the charge of the court, they were cured or relieved of such infirmities when considered in connection with the charge of the court as a whole.

The instructions of the court must, of course, be referred to the evidence of the particular case on trial; and when those under consideration are so referred we feel confident that there was no error, nor injury to the defendant, either in the charge of the court as a whole, or in those parts to which it reserved exceptions.

Of course, the relation of passenger and carrier continues to exist only until the passenger has had reasonable time and opportunity to alight from the train, and to leave the carrier's premises in the customary manner. Whether the passenger failed to depart within a reasonable time, or whether she left the train or the

carrier's premises by an unusual route, and in a careless or negligent manner, was a question for the jury. There is nothing in the charge of the court in this case contrary to the rules stated by Mr. Hutchinson and Mr. Elliott, and recognized by the courts, as to when such relation ceases.

We are unable to find any possible theory upon which the defendant was entitled to the affirmative charge. There was no error in the refusal to give any of the defendant's requested charges assigned as error in this case. Most of these charges (5, 6, 7, 8, and 9) were requested upon the theory that it was the duty of the court to charge the jury that, if the plaintiff's injuries were proximately caused by her defective eyesight, she was not entitled to recover; and the refusal to give them is here insisted on as error. We cannot agree with counsel for appellant that it was the duty of the court to give these instructions, for this would be tantamount to its instructing the jury that if the plaintiff's eyesight was defective she could not recover in this case, because she had failed to allege such defect in her complaint.

If the defendant conceived that the injury complained of was the result of, or was proximately caused by, the defective eyesight of the plaintiff, and not by the negligence of its agents or servants, as alleged in the complaint, it should have set up such matter by a special plea, and thereby made it an issuable fact. It is conceded by counsel for defendant that it was not one of the issues on trial, because there was no allegation in the complaint as to such defective sight, nor was there any plea averring that the injuries suffered by the plaintiff were in consequence of such defective sight. The charges were therefore abstract and misleading. As before stated, there was ample evidence to support the verdict of the jury, and the mere fact that

some of the evidence tended to show that the plaintiff's eyesight was defective was not sufficient to take from the jury the question whether or not the plaintiff had proved any count of her complaint.

While the plaintiff probably could have based a count upon the negligence of the defendant in putting her off the car in the manner described, and because of her defective eyesight, which was known to the defendant's agents or servants in charge of the car, if such fact was known, it was not necessary for her to do so. She had other counts which were sufficient, and evidence ample to support them, believed by the jury. The defendant had no right to require that she should seek recovery on such count. As before stated, if the defendant conceived that plaintiff's injuries were the result of her defective eyesight, which was unknown to its agents or servants in charge of the car, and was therefore not the result of the negligence of the defendant, it should have pleaded such matter as a special defense.

Finding no error, the judgment of the trial court must be affirmed.

Affirmed.

SIMPSON, MCCLELLAN, and SAYRE, JJ., concur.