TERRE HAUTE, INDIANAPOLIS & EASTERN TRACTION COMPANY v. HUNTER.

[No. 8,743. Filed January 28, 1916. Rehearing denied April 18, 1916. Transfer denied June 9, 1916.]

1. CARRIERS.—*Carriage of Passenger.*—*Duty of Carrier.*—Where it appears that a passenger on an interurban car notified the conductor that he wished to alight at stop 32, but, because of the negligence of the conductor, he was carried to stop 34, with the surroundings of which he was unacquainted, and was then told that he had reached his destination and directed to alight, and was killed while attempting to walk back along the tracks to stop 32, the relation of carrier and passenger, under such circumstances, did not terminate with the departure from the car, as the carrier owed the passenger the duty of using a reasonable degree of care to deliver him safely to his proper destination, since the relation of carrier and passenger having once been established, it con-

400        APPELLATE COURT OF INDIANA,

Terre Haute, etc., Traction Co. *v.* Hunter—62 Ind. App. 399.

tinues until terminated by the voluntary act of the passenger or by the act of the carrier, under circumstances justifying its termination and such termination was not justified by the act of the railroad in putting off the passenger at the wrong place.    p. 406.

2.    CARRIERS.—*Carriage of Passengers.—Duty of Carrier.*—At the end of the journey the relation of passenger and carrier continues until the passenger has had a reasonable opportunity to depart from the train or car and the station in safety.    p. 406.

3.    CARRIERS.—*Carriage of Passengers.—Injury.—Intervening Agency.*—Where a passenger on an interurban car was negligently carried past a stop where, as he had informed the conductor, he wished to be put off the car, and in attempting to reach his original destination, without directions or assistance from the conductor, by walking back along defendant's tracks, was struck and killed by another car, the fact that the decedent elected to walk upon the railroad tracks rather than take another way, can not be held, as a matter of law, to be such an intervening cause as would relieve liability for the original, antecedent negligence, but should be submitted to the jury upon a question of decedent's contributory negligence.    p. 413.

4.    CARRIERS.—*Carriage of Passengers.—Passenger Carried Beyond Destination.—Duty of Carrier.*—Where a passenger is carried beyond his station to another station, it is the duty of the company to use reasonable care to see that the passenger is delivered at his proper station; and this duty, in the instant case, might have been fulfilled by giving proper directions as to the way to be taken, with instructions as to the dangers likely to be encountered, or by proper arrangements for transportation upon a returning train.    p. 414.

5.    CARRIERS.—*Carriage of Passengers.—Injury to Passenger.—Intervening Agency.*—Where a passenger on an interurban car was negligently carried past his destination to a stop with the surroundings of which he was totally unacquainted, and was there informed by the conductor that he had arrived at his station and was directed to leave the car, and upon discovering that he had been put off at the wrong point, started walking back along the defendant's tracks toward his original destination and while so doing was struck and killed by another car, the conduct of the decedent in acting as he did under the circumstances cannot, as a matter of law in determining the sufficiency of the complaint, be held to be such an intervening agency as breaks the line of causation and becomes the responsible cause of the injury, thereby relieving the defendant of its antecedent negligence, since the defendant company might reasonably have anticipated that the decedent would act as he did under the circumstances and was bound to know the perils attendant upon such a course of action.    p. 415.

6.    EVIDENCE.—*Judicial Notice.—Character of Interurban Car.*— The court will take judicial notice of the fact that interurban cars

are propelled by electricity and are much more easily stopped and started than steam trains which usually consist of several cars and a heavy engine. p. 416.

7. NEGLIGENCE.—*Proximate Cause.—Concurring Causes.—Liability.*—Where two causes concur in producing an injury, the party at fault for one of such causes will be held liable, if the injury would not have occurred in the absence of his fault and, in the case at bar, where the decedent was killed by a car while walking back along defendant's railroad track toward his station past which he had been negligently carried, the accident would not have occurred had it not been for the original negligence in carrying decedent past his proper destination. p. 417.

8. TRIAL.—*Verdict.—Submission of Interrogatories.—Propriety.— Statute.*—Under §572 Burns 1914, Acts 1897 p. 128, providing that the jury may be required to find specially, by answers to interrogatories, upon particular questions of fact, in an action against an interurban railroad for the death of a passenger negligently carried past his station, and who was killed by another car while attempting to walk back thereto, the interrogatory, "Could the motorman in the exercise of ordinary care have stopped his car and prevented striking plaintiff after he discovered plaintiff on said bridge?", was improperly submitted as its answer calls for a conclusion rather than a fact. p. 417.

9. APPEAL.—*Review.—Answer to Special Interrogatories.*—Where an interrogatory is improperly submitted to the jury its answer cannot be taken into account for any purpose since the appellate court will not consider anything which is improperly in the record in reaching its conclusions. p. 418.

10. TRIAL.—*Verdict.—Issues.*—In an action against an interurban railroad for the death of a passenger killed while attempting to walk back along the tracks to his destination past which he had been negligently carried, where the jury answered negatively an interrogatory as to whether the motorman did all within his power to prevent the accident after discovering decedent on the tracks, the general verdict for the plaintiff could stand as resting on a paragraph of complaint based on the theory of last clear chance. p. 419.

11. APPEAL.—*Briefs.—Presentation of Error.—Review.*—Where the "Points and Authorities" in appellant's brief present no question of conflict between the answers to special interrogatories and the general verdict nor any question as to error in overruling the motion for a new trial, except the giving and refusal of certain instructions, the court will consider no other which might arise under the overruling of the motion. p. 419.

12. TRIAL.—*Action for Injuries.—Instructions.*—An instruction as to what might be considered in determining whether plaintiff's decedent was guilty of any "material" negligence in attempting to

cross a railroad bridge under the circumstances disclosed by the evidence is not erroneous on the ground that the word "material" left to the jury the question as to what degree, quality or extent of negligence they would regard as material.   p. 419.

From Hendricks Circuit Court; *George W. Brill*, Judge.

Action by John W. Hunter against the Terre Haute, Indianapolis and Eastern Traction Company.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*F. Winter, D. E. Watson, Otis E. Gulley, George C. Harvey* and *W. H. Latta*, for appellant.
*W. O. Dunlavy* and *W. W. Thornton*, for appellee.

SHEA, J.—Appellee, in the court below, recovered judgment for $2,000 for loss of services of his minor son, who was killed by being struck by one of appellant's cars.   The cause was originally filed in the Putnam Circuit Court and on a change of venue it was taken to the Hendricks Circuit Court. The errors assigned for a reversal are the overruling of appellant's demurrers to each of the first, second, third and fourth paragraphs of complaint, and the overruling of its motions for judgment on the facts found in answer to interrogatories notwithstanding the general verdict and for a new trial.

The complaint was in four paragraphs, each alleging in substance, the following general facts: That decedent, a boy twelve years old, took passage at Greencastle, Indiana, on appellant's interurban passenger car for stop 32, which was west of Greencastle; that he paid his fare to that point, and informed the conductor of the car of the place where he desired to alight or stop; that the fare was accepted for that place by the conductor, but in violation of the contract and of decedent's request,

he was carried beyond the place of his destination to stop 34, and was put off by the conductor at a stop which he supposed was his destination, and with which he was unfamiliar; that in attempting to return to his destination by the railway track and crossing a creek over and upon appellant's railway bridge, the only way he knew how to cross said creek, he was killed by appellant's car, which came up behind him from the west while he was still upon said railway bridge. The specific negligence charged against appellant in the first paragraph of complaint was the alleged wrongful conduct of the conductor of the west-bound car, upon which decedent was a passenger, in carrying him past stop 32, at which point he should have been permitted to alight from the car, after he in person, and by his mother, Mary E. Hunter, had informed the conductor that he wished to get off said car at stop 32; the carelessness and negligence of appellant's servants in directing decedent to alight from the car at stop 34; the negligence and carelessness of appellant's servants in failing to provide any means of transportation back to stop 32; and the carelessness and negligence of appellant in failing to notify decedent that there would be another car going east in a few minutes. The second paragraph of complaint contains substantially the same charge of negligence, based upon the same theory and facts, with a slight variation in the statement, to the effect that after decedent had taken passage upon said car, and before he had reached stop 32, he informed the conductor, in person, and by his father, John W. Hunter, that he wished to alight and get off said car at that point; that after the car had passed stops 32 and 33, and before it reached a station of appellant called Hutchinson, between stops 33 and 34, the conductor called out stop 32,

but the car was then approaching the station of Hutchinson and had slowed up for the purpose of discharging and taking on passengers, whereupon decedent arose for the purpose of alighting therefrom, but the conductor informed him that it was not his place of alighting and directed him to remain upon the car, which he did; that the car then proceeded west until it arrived at stop 34 on appellant's railway, where it stopped, and the conductor then directed decedent to get off the car, which he did. The third paragraph of complaint is based upon the theory of last clear chance, and charges that decedent was in a perilous position upon said track from which he could not escape, and in which position appellant's motorman saw him and realized his danger in ample time to have stopped his car by the exercise of ordinary care, which the motorman carelessly and negligently failed to do, but permitted the car to strike and injure decedent as charged. The fourth paragraph of complaint differs from the first and second only in that it charges, that at the time decedent was so directed by the conductor to leave the car and at the time he alighted therefrom at stop 34, he believed that he had arrived at stop 32, as he was informed by the conductor that he had arrived there; that after the car had left him, decedent perceived he was not at stop 32 and for the first time ascertained that he was at stop 34, so that the legal effect of the first, second and fourth paragraphs of complaint is not essentially different.

It is argued that the demurrer should have been sustained to the first, second and fourth paragraphs of complaint. In considering this question these paragraphs may be considered together. The objections thereto are identical and substantially as follows: That they do not sufficiently state facts

showing: (1) That appellant violated, imperfectly performed or omitted to perform any duty it owed appellee, which would constitute actionable conduct on its part and make it liable for the injuries complained of; (2) that the acts on the part of appellant complained of, were negligently, willfully, or otherwise wrongfully performed or omitted by it; (3) that the conduct upon the part of appellant which would amount in all to negligence, willfullness, or other wrongful conduct which would be actionable on its part; (4) that the alleged injuries and damage were approximately caused by any act or omission on the part of appellant which was negligent, willful or otherwise wrongful, and for which it would be liable under the allegations of said paragraphs of complaint. In support of its contention appellant argues that the damages sued for are not the proximate result of the alleged negligent act, because the conductor of the west-bound car was not obliged to anticipate and guard against the accident in question, and therefore was not negligent in respect to it; that the duty of the conductor does not extend so far, even in the exercise of the highest degree of care; that "the facts pleaded show the intervention of three independent agencies, after the act complained of had wholly spent its force: (1) The act of the appellee himself in deciding what route he would take in returning, and in putting his decision into execution; (2) the actions of the decedent in undertaking to remain upon the track to signal the oncoming east-bound car until it was too late to get out of the way; (3) the arrival and movements of the east-bound car"; that "under the doctrine of last clear chance, the appellee knew of the act of the conductor in carrying him and his family past his station (the act complained of) and could have avoided the results

thereof. His act is therefore the sole operating cause."

We will first proceed to consider the question of what duty, if any, appellant owed to decedent after its conceded negligence in carrying him past the station at which he should have been permitted to alight. It is argued on behalf of appellant that it owed appellee's decedent no duty as a passenger after he alighted and departed safely from stop 34, a proper station on appellant's road. Upon this proposition there is much citation of authority and in some jurisdictions appellant's theory is sustained, but after a careful examination of all the authorities, especially those within our own State, it is the judgment of this court that appellant owed

1. appellee's decedent the duty of using a reasonable degree of care to deliver him safely at the point of his destination; that is to say, appellant owed him this duty as a passenger until he arrived safely at stop 32. When the relation of carrier and passenger is once established, it continues until terminated by the voluntary act of the passenger or by the act of the carrier, under circumstances justifying its termination, and extends to the arrival of the passenger at his destination. It can not be said that the act of decedent in this case voluntarily terminated the relation because he was put off at a wrong stop, without his knowledge or consent, and where he was unacquainted with the surroundings. At the end of the journey

2. the relation of passenger and carrier continues until he has had a reasonable opportunity to depart from the train or car and the station in safety. 6 Cyc 541.

The case of *New York, etc., R. Co.* v. *Doane* (1888), 115 Ind. 435, 17 N. E. 913, 1 L. R. A. 157, 7 Am. St 451, is an interesting case, and seems to be de-

cisive of the question here presented. Briefly stated, the facts are, that appellee Doane was a passenger riding in a caboose attached to a freight train, which, upon arrival at her destination, did not pull up to the platform. Appellee, relying upon the statement of a fellow passenger and believing that the caboose would be stopped at the station, did not alight therefrom. The caboose was not stopped at the station. After some little time the conductor discovered that appellee had not alighted and the train was stopped, the caboose being at a point eighty to ninety rods beyond the station. Appellee requested the conductor to take the train to the station platform, which he refused to do, and upon the conductor's request she alighted with his assistance. Appellee was unacquainted with the locality, followed some direction given by the conductor and started to walk back to the station upon the railway track as the best route for her to take. In attempting to cross a cattle pit, on the way to the station, she fell and broke her arm and was otherwise injured. There were gates upon the side of the right of way through which she might have entered the premises adjoining and gone to the station without walking upon the railway track, but she had no knowledge that she might do so, and nothing occurred to direct her attention to any other route than the railway track. The court held that appellee was justified in not getting off at the place where the caboose first stopped; that the railway company failed to perform a plain and urgent duty in not backing its train to the station after she was discovered on the caboose, or in not giving her such assistance and instructions as would insure her safe return to the station after it had carried her beyond her destination; that the duty of a railroad company as a common carrier

of passengers is not fully performed until it delivers its passengers safely at the station to which they have paid their fares.     The court also held that appellee was not guilty of contributory negligence in failing to discover the gates leading into the private enclosures nor was she guilty of contributory negligence in her effort to walk over the cattle pit, as a matter of law. See, also, *Kentucky, etc., R. Co. v. Buckler* (1907), 125 Ky. 24, 100 S. W. 328, 8 L. R. A. (N. S.) 555, 128 Am. St. 234; *Alabama, etc., R. Co. v. Cox* (1911), 173 Ala. 629, 55 South. 909; *Louisville, etc., Co. v. Nolan* (1893), 135 Ind. 60, 34 N. E. 710; *Indiana Union Traction Co. v. Keiter* (1911), 175 Ind. 268, 275, 92 N. E. 982; *White Water R. Co. v. Butler* (1887), 112 Ind. 598, 14 N. E. 599; *Evansville, etc., R. Co. v. Kyte* (1893), 6 Ind. App. 52, 32 N. E. 1134; *Pittsburgh, etc., R. Co. v. Rose* (1907), 40 Ind. App. 240, 250, 79 N. E. 1094, 81 N. E. 1179; *Olson v. Chicago, etc., R. Co.* (1905), 94 Minn. 241, 102 N. W. 449; *Terre Haute, etc., R. Co. v. Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Texas, etc., R. Co. v. Bigger* (1915), 239 U. S. 330, 36 Sup. Ct. 127, 60 L. Ed. 127; *Reimard v. Bloomsburg, etc., R. Co.* (1910), 228 Pa. 384, 77 Atl. 560, 61 Am. & Eng. R. Cas. 10; *Georgia, etc., R. Co. v. McAllister* (1906), 126 Ga. 447, 54 S. E. 957, 7 L. R. A. (N. S.) 1177; *Adams v. Missouri, etc., R. Co.* (1890), 100 Mo. 555, 12 S. W. 637, 13 S. W. 509; *Birmingham, etc., R. Co. v. Seaborn* (1910), 168 Ala. 658, 53 South. 241; *Ham v. Delaware, etc., R. Co.* (1893), 155 Pa. St. 548, 26 Atl. 757, 20 L. R. A. 682; *Kentucky, etc., R. Co. v. Biddle* (1896), 17 Ky. L. R. 1363, 34 S. W. 905.

In the latter case, plaintiffs were carried three miles beyond their station to a proper station on the line of defendant's road, where they alighted from the train.     The conductor made an effort to

secure a conveyance for them to return, but failed to do so. Injuries resulting from their attempt to walk back along the railroad track were held to be the proximate result of the failure to stop at the station to which they had purchased tickets. In the case of *Reimard* v. *Bloomsburg, etc., R. Co., supra,* the railroad company was held liable where plaintiff was put off at a proper station beyond her point of destination, and in walking back over the company's tracks and right of way she was injured. It was held that the railroad company ought to have reasonably anticipated that plaintiff would do just what she did, and that its negligence was therefore the proximate cause of the injury.

It is next argued that there is no actionable wrong charged against appellant in the complaint because the declarations that the negligence of appellant in carrying appellee's decedent beyond his destination to stop 34 was not the proximate cause of the injuries, for the reason that there were intervening agencies which broke the causal connection between the antecedent negligence and subsequent injury, as above stated. Very many definitions growing out of the circumstances of the particular case being considered are given, both by the law writers and the decided cases. We shall proceed to examine a few of these authorities.

In the case of *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, 103, 67 N. E. 923, the Supreme Court has defined proximate cause as follows: "And that cause will be held proximate which is shown to be active, operative, and continuing, and the probable and natural source of the injury; that is to say, where the sequence or injury complained of under the circumstances surrounding the case is such as might and ought to have been foreseen by a person of ordinary sagacity as a

probable result of the thing done, it will be deemed the responsible or proximate cause." On the question of "proximate cause," in the case of *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 118, 88 N. E. 1073, 89 N. E. 485, the court uses this language: "What is proximate cause and what is essential to show it? 'One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable.' *Stone* v. *Boston, etc., R. Co.* (1898), 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794. * * * 'The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances attending it. * * * The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation?' *Milwaukee, etc., R. Co.* v. *Kellogg* (1876), 94 U. S. 469, 24 L. Ed. 256. 'If an efficient and adequate cause is shown, it may be considered as the real or proximate cause, unless another, not incidental to it, but independent thereof, appears to have intervened and caused the accident or injury in controversy.' (Authorities). 'The proximate cause of an accident or injury is sometimes described as the immediate cause, the nearest cause, the actual or direct cause, or the efficient cause.' *Indianapolis St. R. Co.* v. *Schmidt, supra.* 'The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation.' *Aetna Ins. Co.* v. *Boon* (1877), 95 U. S. 117, 24 L. Ed. 395. * * * 'The

proximate cause of an injury may in general be stated to be * * * an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted, notwithstanding the latter.' 6 Words and Phrases 5759. 'The term "proximate" indicates that there must be no other culpable and efficient agency intervening between the defendant's derelictions and the loss.' 6 Words and Phrases 5758. 'When two causes unite to produce the loss, the question that remains is, Which was the proximate cause?' *Blythe* v. *Denver, etc., R. Co.* (1890), 15 Colo. 333, 25 Pac. 702, 11 L. R. A. 615, 22 Am. St. 403." In the case of *Balzer* v. *Waring* (1911), 176 Ind. 585, 593, 95 N. E. 257, 48 L. R. A. (N. S.), 834, this definition is found: "Proximate cause is the act that immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probable injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring about such consequences. *Evansville Hoop, etc., Co.* v. *Bailey, supra,* and authorities cited." In the case of *Cincinnati, etc., R. Co.* v. *Acrea* (1908), 42 Ind. App. 127, 133, 82 N. E. 1009, this language is used: "In determining proximate cause, the inquiry is directed to the responsible cause, without reference to whether it is the first or last in the succession of events that resulted in the plaintiff's injury. *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95.

Proximate cause has been further defined to be the efficient cause, one that necessarily sets the other causes in operation. *Pennsylvania Co.* v.

*Congdon* (1893); 134 Ind. 226, 230, 39 Am. St. 251."
·The court in the case of *Cumberland Tel., etc.,
Co.* v. *Kranz* (1911), 48 Ind. App. 67, 74, 95 N. E.
371, 374 said: "The proximate cause of an injury
is the responsible cause, the cause which is the
active, operative, continuing and natural source
of the injury. . * * * The proximate cause of
an injury is the moving cause—the cause without
which the injury would not have occurred, although
subsequent events or agencies may· have helped to
bring about the result. The real test of what is
a proximate cause, when there are intervening.
agencies, is whether the result is such as might
reasonably have been expected as the consequence
of the original negligence, and if it is such, the
liability continues in spite of an intervening cause
or causes." In the case of *Peru Heating Co.* v.
*Lenhart* (1911), 48 Ind. App. 319, 329, 95 N. E. 680,
this definition is given: "The proximate cause is
ascertained by determining the responsible cause,
without regard to its time or place in the succession
of events that resulted in the injury. (Authori-
ties.)

"If the original wrongful act or omission supplied
the condition by which the subsequent act was
rendered hurtful, he who committed that act is
responsible. (Authorities)"

A definition often cited and referred to is that
given by the court in the case of *Milwaukee & St.
Paul, etc., R. Co.* v. *Kellogg* (1876), 94 U. S. 469,
24 L. Ed. 256: "The primary cause may be the
proximate cause of a disaster, though it may oper-
ate through successive instruments, as an article
at the end of a chain may be moved by a force ap-
plied to the other end, that force being the proxi-
mate cause of the movement, * * * " The follow-
ing definition is taken from *Shippers, etc., Co.* v.

*Davidson* (1904), 35 Tex. Civ. App. 558, 80 S. W. 1032, and is quoted with approval in Thompson on Negligence; White's Supplement §48: "The proximate cause is not necessarily the one nearest to the event, but the primary cause may be the one proximately responsible for the result although it may operate through one or more successive instruments. If the primary cause was so linked and bound to the events succeeding it that all together they create and become one continuous whole, the one event so operating upon the other as to tie the result to the primary cause, the latter will be the proximate cause of the injury."

Applying these principles to the averments of the complaint, may we conclude that the negligence of appellant in carrying decedent beyond his stop and in failing to safely deliver him at his destination was the proximate cause of the injury, or must we conclude that there were intervening forces which broke the causal connection between such antecedent negligence and the subsequent injury? Under the holding in the case of *New York, etc., R. Co.* v. *Doane, supra,* we think the fact that decedent, as well as his father, elected to walk upon the railroad track rather than take another way, can not be held an intervening cause, as a matter of law, but should be submitted to the jury upon the question of decedent's contributory negligence. *Alabama, etc., R. Co.* v. *Cox, supra.*

It is argued that in the Doane case the passenger was carried beyond the station platform and was required to alight at a place where there was no station or platform, and therefore a different rule should apply in this case, because the decedent alighted from the train at a proper stop or station. It is undisputed that the passenger in neither case

414        APPELLATE COURT OF INDIANA,

Terre Haute, etc., Traction Co. *v.* Hunter—62 Ind. App. 399.

was injured in alighting from the train at the place at which the train stopped, but in both instances the injury occurred while the passenger was attempting to return along the track to the point of destination where he should have been permitted to alight, so we conclude that the same principle should apply in the instant case as was invoked in the Doane case. It is also argued that there is a broad distinction between cases in which passengers are let off at a station platform and at a point not a station platform upon the right of way. It is insisted that no courts have held that, where a passenger has been carried past his destination to a station beyond, he has a right to the possession of the tracks and right of way of the company so carrying him until he has sufficient time to return to his destination; that if "such were true, the railroad company must, after carrying one beyond his station to another station operate its trains with reference to the right of the person so carried past his station to use and occupy its railroad tracks and right of way." We need not go to the extent indicated by counsel, but we do believe it to

4. be the true rule that, where a passenger is carried beyond his station to another station, it is the duty of the company to use reasonable care to see that the passenger is delivered at his proper station. This may be done by proper direction as to the way to be taken, with instructions as to the dangers likely to be encountered, or by proper arrangements for transportation upon a returning train, which could very well have been done in this instance, as the averments of the complaint disclose. *Adams* v. *Missouri, etc., R. Co., supra;* Hutchinson, Carriers (3d ed.) §1126; *New York, etc., R. Co.* v. *Doane, supra; Birmingham, etc., R.*

MAY TERM, 1916.    415

Terre Haute, etc., Traction Co. *v.* Hunter—62 Ind. App. 399.

*Co.* v. *Seaborn, supra; Alabama, etc., R. Co.* v. *Cox, supra.*

As to whether decedent was guilty of contributory negligence in failing to get off the track before being struck, thus furnishing the intervening cause of the injury, can not be declared as a matter of law in determining the sufficiency of the complaint, in view of its averments. An intervening agency, which will relieve a party of antecedent negligence and which breaks the line of causation and becomes the responsible cause of the injury, must have been such an one as might not have been reasonably anticipated under all the circumstances. It is the judgment of this court that the intervening circumstances in this case, which are urged by appellant as being sufficient to break the line of causation, or similar circumstances, might reasonably have been anticipated, and therefore, can not relieve appellant of its original negligence, from the viewpoint from which we are now considering the case, namely, the sufficiency of the three paragraphs of complaint. Appellant's conductor knew that decedent was put off the train at the wrong station and in a sparsely settled community with only one house in sight which was some distance away; that he would very likely follow the railroad track back to his destination, as being the most direct and convenient way; that there was a long trestle which he would be obliged to cross in so doing; that there was a car upon its track approaching near at hand and in the same direction; that said car would overtake decedent while on his way to said station, and, in the ordinary course of events, might reach decedent while he was upon said trestle. Under such circumstances appellant failed to give any directions as to the way to be taken back to station 32; failed

416    APPELLATE COURT OF INDIANA,

Terre Haute, etc., Traction Co. *v.* Hunter—62 Ind. App. 399.

to give any notice as to the approaching train which struck decedent; failed to notify the conductor of the passing car of the fact that he had carried decedent beyond his station 32 to station 34; and failed to make any provisions for his safe return thereto. It must be borne in mind in this connection that this was an electric interurban railroad; that the cars or trains usually consist of only one car. The court may take judicial notice of the fact that such cars are propelled by electricity and are much more easily stopped and started than steam trains, which usually consist of several cars with heavy locomotive engine attached. If this had been a heavy steam train instead of a light, one-car, electric interurban, it could be argued with more force that appellant could not back its car to the point of decedent's destination, or could not stop its cars at a meeting point for a sufficient length of time to inform the conductor of the passing car, which ran over decedent in this case, of the exact situation and of the danger to decedent. Courts are obliged to take all these circumstances into account when it is argued, as in this case, that railroad companies can not interrupt their regular schedules to properly deliver passengers at their destination. *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822; *Chicago, etc., R. Co.* v. *Mitchell* (1914), 56 Ind. App. 354, 105 N. E. 396; *Terre Haute, etc., R. Co.* v. *Buck, supra; Alabama, etc., R. Co.* v. *Cox, supra.* It has been recently held by this court that the intervention of an independent agency does not break the line of causation so as to relieve the original wrongdoer in cases where, by the exercise of ordinary prudence, the original wrongdoer should have foreseen such intervening cause and guarded against the danger likely to result therefrom. *Cleveland, etc., R. Co.* v. *Clark, supra.*

Where two causes concur in producing the injury, the party at fault for one of such causes will be held liable, if the injury would not have occurred in the absence of such fault. *Belt Railroad, etc., Co.* v. *McClain* (1914), 58 Ind. App. 171, 106 N. E. 742. It can be said in the instant case that the injury to decedent would not have occurred in the manner charged in the complaint, if appellant had not carried him past his stop, which act upon the part of appellant is concededly negligent.

It is not argued that the third paragraph of complaint is obnoxious to a demurrer, but it is argued that the answer of the jury to interrogatory No. 12 conclusively shows that the recovery was not based upon the doctrine of last clear chance, upon which this paragraph is grounded. The interrogatory and answer thereto are as follows: "Could the motorman in the exercise of ordinary care have stopped his car and prevented striking plaintiff after he discovered plaintiff on said bridge? Answer: No." In determining the effect of this interrogatory as presented in this connection, we are confronted with the question as to whether it was such an one as under the rule could properly be submitted to a jury. If it could not, may we take the answer thereto into account for any purpose in the consideration of the issues here involved? Section 572 Burns 1914, Acts 1897 p. 128, by virtue of which interrogatories are authorized to be submitted to a jury, provides that the jury may be required to find specially "upon particular questions of fact." It has been repeatedly held that an interrogatory which calls for a conclusion is improper. *Pennsylvania Co.* v. *Reesor* (1915), 60 Ind. App. 636, 108 N. E. 983;

418 APPELLATE COURT OF INDIANA,

Terre Haute, etc., Traction Co. *v.* Hunter—62 Ind. App. 399.

*Tippecanoe, etc., Co.* v. *Jester* (1913), 180 Ind. 357, 101 N. E. 915, L. R. A. 1915E 721; *Marietta, etc., Co.* v. *Pruitt* (1913), 180 Ind. 434, 102 N. E. 369; *Lake Erie, etc., R. Co.* v. *Reed* (1914), 57 Ind. App. 65, 103 N. E. 127.

It is clear under the rule as announced that the interrogatory was improperly submitted, as it calls for a conclusion rather than a question of fact. Appellant's learned counsel does not argue that this interrogatory was properly submitted, but insists that the answer thereto shows conclusively that the jury did not rest its verdict upon the third paragraph of complaint as above stated, and should be considered in that connection. If, as we have decided, said interrogatory was not a proper one to be submitted to the jury under the law, and could not be taken into account in determining whether there was a conflict between the facts specially found and the general verdict, we are of the opinion that said interrogatory could not be taken into account for any purpose. We have searched diligently for authority upon this point, but have found nothing bearing directly upon the question, and we reach our conclusion herein by applying the general principle that this court shall not consider anything which is improperly in the record in reaching its conclusions. We therefore conclude that the jury might have rested its verdict upon the paragraph of complaint which is based upon the doctrine of last clear chance. It will be observed also that this interrogatory uses the word "plaintiff" instead of "decedent." Query—whether it is entitled to any consideration for this reason?

Interrogatory No. 15 and the answer thereto read as follows: "Did the motorman do all within his power to prevent said accident after he discovered plaintiff and his said son upon the bridge?

Answer:. No." In view of this situation, we conclude that the verdict of the jury might very well have rested on the third paragraph of complaint, which presents the theory of last clear chance. *Watts* v. *Chicago, etc., R. Co.* (1914), 61 Ind. App. 51, 104 N. E. 42.

No question of conflict between the facts found in answer to interrogatories and the general verdict is presented in appellant's "Points and Authorities" nor is any question presented in its "Points and Authorities" upon any error of the court in overruling the motion for a new trial, except the giving of instructions Nos. 6, 12, 13, 14, 15 and 21 on its own motion and the refusal to give appellant's instructions Nos. 2 and 5. We therefore give no consideration to any other questions which might arise thereunder. The general verdict finds that appellant was guilty of negligence which was the proximate cause of decedent's injury and death, and that decedent was free from contributory negligence. No question is presented which will warrant this court in reviewing the findings thus made by the general verdict.

Instruction No. 6 given by the court on its own motion is objected to. It told the jury that if any one paragraph of the complaint was proven by a preponderance of the evidence, appellee was entitled to recover. It is argued that at least one of said paragraphs did not state a cause of action and for that reason the instruction was erroneous. Inasmuch as we have held that all paragraphs of complaint stated a cause of action, the objection is not well taken. It is argued that the court erred in giving to the jury the fifteenth instruction because by the use of the word "material" in said instruction the question was left to the jury as to what degree or quality or extent of

420    APPELLATE COURT OF INDIANA;

Terre Haute, etc., Traction Co. *v.* Hunter—62 Ind. App. 399.

negligence they would regard as material. Instruction No. 15 reads as follows: "In determining whether or not the boy, Harry Hunter, or his father were guilty of any material negligence which contributed to his injury in attempting to cross upon the bridge, you may take into consideration what a reasonably prudent man would have done under like or similar circumstances, bearing in mind the kind of a day it was, the condition of the boy's health, their knowledge or lack of knowledge of a way across the creek, back to their place of destination, and all other connecting circumstances therewith." This instruction is not objectionable under the holdings of both this court and the Supreme Court. *Citizens Street Ry. Co.* v. *Twiname* (1887), 111 Ind. 587, 13 N. E. 55; *Indianapolis, etc., Transit. Co.* v. *Edwards* (1905), 36 Ind. App. 202, 74 N. E. 533.

No error was committed in giving instructions Nos. 12, 13 and 14 upon the court's own motion, and in refusing to give instructions Nos. 2 and 5 tendered by appellant, for the reasons stated in the discussion as to the sufficiency of the first, second and fourth paragraphs of complaint; neither did the court err in giving instruction No. 21 on its own motion. No error was committed in overruling the demurrers to the first, second and fourth paragraphs of complaint. We have examined all the questions properly presented in the very able brief of appellant's learned counsel, and find no error presented that would warrant this court in reversing this cause. A correct result was reached in the court below upon the record before us. Judgment affirmed.

NOTE.—Reported in 111 N. E. 344. Termination of liability of carrier to a passenger, 6 Ann. Cas. 1033; 19 Ann Cas. 1019; Ann. Cas. 1915C 1223; 6 Cyc 541; note, 37 L. R. A. (N. S.) 264. Proximate cause, 29 Cyc 496, 501, 528, 641. 'See under (9) 38 Cyc 1909, 1912.